TINA LEARDI & others[1] *vs.* HAROLD BROWN[2] & another.[3]

Suffolk.   November 7, 1984. — February 28, 1985.

Present: HENNESSEY, C.J., WILKINS, LIACOS, ABRAMS, & LYNCH, JJ.

*Landlord and Tenant,* Habitability, Lease, Quiet enjoyment. *Consumer Protection Act,* Landlord and tenant, Injury, Damages, Class action, Demand letter. *Damages,* Consumer protection case. *Emotional Distress. Words,* "Injury."

Certain language in a landlord's printed form of lease which had a tendency to deceive residential tenants with respect to the landlord's obligation to deliver and maintain the leased premises in a habitable condition and which suggested that the tenant, by his signature on the lease, waived his right to habitable housing was unlawful under G. L. c. 93A, the Consumer Protection Act. [155-157]

A landlord's inclusion of unlawful provisions in a printed lease form constituted an injury cognizable under G. L. c. 93A, the Consumer Protection Act, even though the aggrieved residential tenants conceded, for purposes of a motion for summary judgment, that the landlord had never attempted to enforce the unlawful provisions against any of them and that none of them had ever read those provisions. [157-161]

Where the plaintiffs in an action under G. L. c. 93A showed that the defendant had invaded their legally protected interest in being free from unlawful provisions in their apartment leases, but did not show that they had suffered any actual harm as a result, it was error for the judge to award treble the minimum damages of twenty-five dollars. [162-163]

Where, in an action under G. L. c. 93A by a class of tenants against their landlord, in which the sole injury at issue was the tenants' right to be free from certain unlawful provisions in their apartment leases, one award of statutory damages was to be made for each leasehold. [164-165]

A demand letter under G. L. c. 93A, § 9 (3), from a class of tenants to their landlord, in which the tenants adequately described the injury they had suffered, was not rendered defective by the inclusion of improper requests that the tenants be paid their attorney's fees and that the landlord consent to the entry of a judgment. [165-166]

---

[1] Marla Allisan, Daniel Button, and Kathleen Button, on behalf of themselves and all those similarly situated.

[2] Doing business as Hamilton Realty Company.

[3] Robert G. Ward, managing agent for Hamilton Realty Company.

The judge who heard an action under G. L. c. 93A correctly concluded that a landlord's response to a demand letter from his tenants was "too indefinite . . . to be regarded as reasonable," where the landlord merely offered not to enforce any provision in the tenants' apartment leases that was contrary to law. [166-167]

A judge was not clearly wrong in concluding that the conduct of a landlord's agent did not give rise to liability of the landlord either for interference with a tenant's quiet enjoyment of her apartment or for intentional infliction of emotional distress. [167-168]


CIVIL ACTION commenced in the City of Boston Division of the Housing Court Department on August 28, 1980.

The case was heard by *E. George Daher*, J.

The Supreme Judicial Court granted a request for direct appellate review.

*M. Robert Dushman* (*Steven M. Brody* with him) for the defendants.

*Harvey S. Shapiro* (*Burton A. Nadler* with him) for the plaintiffs.

*Ernest L. Sarason, Jr.*, for Massachusetts Tenants Organization, amicus curiae, submitted a brief.

HENNESSEY, C.J. This is an appeal from a judgment entered in the Housing Court of the City of Boston, and involves the interpretation of a recent amendment to G. L. c. 93A, the Consumer Protection Act. Specifically, we are asked to determine whether, within the meaning of that statute, the tenants comprising the plaintiff class have been "injured" by the use of deceptive and illegal clauses in the defendants' standard apartment lease, despite the fact that the plaintiffs were unaware of, and the defendants have never attempted to enforce, these illegal provisions. We conclude that, in the particular circumstances presented here, the plaintiffs have been "injured," and are thus entitled to an award of statutory damages under G. L. c. 93A.

We are also confronted with the appeal of the plaintiff Marla Allisan, who, in addition to her claims as a member of the class, asserts certain distinctive and additional claims on her own behalf. We conclude that there was no error in the judge's order denying Allisan's individual claims.

1. *Facts with Respect to the Class Claims.*

In the spring of 1980, Tina Leardi received an offer from her landlord, Harold Brown, to renew her tenancy at an increased rental commencing on September 1, 1980. At the time this offer was made, Leardi occupied her premises pursuant to the landlord's standard apartment lease. On or about August 1, 1980, after she had notified the landlord of her intention to renew, Leardi received an "Agreement to Extend Lease," which was designed to extend the standard apartment lease for an additional year. After consulting with counsel, Leardi refused to sign the agreement to extend the lease on the ground that it, as well as the standard apartment lease which it incorporated, contained illegal and deceptive terms.

On August 13, 1980, Leardi's counsel made a written demand for relief under G. L. c. 93A, § 9 (3). The demand was made on behalf of all individuals who had signed, or who had been asked to sign, the standard apartment lease containing the allegedly illegal provisions. The demand letter requested that the landlord cease using such illegal clauses in its lease, that the lease currently in use be deemed null and void, that a new lease without the offending provisions be offered, and that each tenant be awarded $25 for each illegal clause in the rental agreement. With respect to those individuals who had refused to sign the agreement to extend the lease, the letter demanded that the landlord charge them only the rent due under the preceding lease, until the tenants had been given the opportunity to enter into revised leases.

The landlord responded on August 21, 1980. He denied that his leases were either unfair or deceptive, but he offered not to enforce or attempt to enforce "any provision of any lease which runs contrary to law and the law's interpretation by the courts." The landlord further advised that if Leardi failed to sign the agreement to extend the lease, or to vacate, by October 1, 1980, he would begin process to recover possession of the premises.

On August 28, 1980, Leardi filed a class action against Harold Brown and his managing agent (defendants) in the Housing Court of the City of Boston. The Housing Court judge

later defined the class as made up of "those individuals who, on or after September 1, 1980, resided in the [premises owned or managed by the defendants Harold Brown and Robert G. Ward] under the agreements here challenged or who so occupied while refusing to enter such agreements."[4] The plaintiffs alleged that numerous provisions of the defendants' standard apartment lease violated the Commonwealth's statutory and decisional law, as well as public policy. The complaint sought declaratory and injunctive relief, damages under G. L. c. 93A, § 9, and damages for "restitution."

The plaintiffs moved for partial summary judgment, conceding, for the purposes of the motion, that no member of the class had ever read, and that the landlord had never attempted to enforce, the offending portions of the lease. The Housing Court judge granted the motion on the c. 93A claim, awarding each member of the class $75, while denying relief on the class claim for restitution.[5] The parties cross appealed, and we granted the application for direct appellate review.

2. *Facts with Respect to the Plaintiff Allisan.*

The plaintiff Marla Allisan also refused to sign the agreement to extend her lease, although in September, 1980, she began paying the increased rent called for by its terms. On September 11, she was served with a notice to quit which terminated her tenancy, and which offered her a new tenancy at $210 per month. She telephoned the defendants' agent to discuss the notice. The agent, Susan Elliot, warned Allisan that the defendants would increase her rent $25 per month until Allisan signed the agreement to extend the lease. Allisan then wrote to Robert Ward, the managing agent for Hamilton Realty Company, explaining her reasons for refusing to sign the extension to her lease. Ward failed to respond to her letter. As a result of the defendants' actions, Allisan claims she has suffered "emotional

---

[4] The defendants have not appealed the certification of the class.

[5] The plaintiffs have appealed the denial of their claims for restitution, but state these claims only as alternatives to recovery under c. 93A. In light of our conclusions under the statute, we need not consider whether restitutionary damages are appropriate.

upset, crying, distraction, chest and shooting arm pains, indigestion, and concern and worry about the status of her tenancy."

Allisan joined the class action as a named plaintiff, and brought individual claims on the basis of interference with quiet enjoyment of the premises in violation of G. L. c. 186, § 14, and intentional infliction of emotional distress. The claims were tried, and on December 29, 1982, the judge of the Housing Court found in favor of the defendants. Allisan appealed.[6]

3. *Defendant's Appeal.*

a. *Validity of Lease Provisions.* The defendants first contend that the Housing Court judge erred in holding various provisions of the standard apartment lease unlawful. A review of the record before the Housing Court establishes, however, that the defendants failed to argue the validity of these provisions in their papers opposing the plaintiffs' motion for partial summary judgment. Since "[o]ur cases hold consistently that a nonjurisdictional issue not presented at the trial level need not be considered on appeal," *Royal Indem. Co.* v. *Blakely*, 372 Mass. 86, 88 (1977), we decline to pass on the merits of the defendants' contentions with respect to the validity of each of the challenged lease provisions. See *General Elec. Co.* v. *Assessors of Lynn*, 393 Mass. 591, 608 (1984); *M. H. Gordon & Son* v. *Alcoholic Beverages Control Comm'n*, 386 Mass. 64, 67 (1982); *South Shore Bank* v. *H & H Aircraft Sales, Inc.*, 16 Mass. App. Ct. 472, 480 (1983).

---

[6] On June 18, 1981, the Attorney General filed suit to restrain the defendant Harold Brown from using "improper and unlawful rental agreement forms in connection with the defendant's business as a residential landlord in Massachusetts." The matter was resolved in the form of a "Final Judgment," to which the landlord consented without admitting any liability or wrongdoing. Under the terms of the judgment, the landlord was permanently enjoined from "enforcing, relying upon, or including in any residential rental agreement with any tenant any provision which states or suggests" that various rights of the tenants or responsibilities of the landlord, guaranteed by law, either did not exist or could be waived. On September 1, 1981, the defendants' standard lease agreement was replaced by a lease drafted to comply with the terms of the "Final Judgment."

We do note, however, that the result here would not be affected by our thorough consideration of the standard lease agreement. For instance, paragraph eight of the lease advises that "THERE IS NO IMPLIED WARRANTY THE PREMISES ARE FIT FOR HUMAN OCCUPATION (HABITABILITY) except so far as governmental regulation, legislation or judicial enactment otherwise requires." By itself, the bold face provision is contrary to our decision in *Boston Hous. Auth.* v. *Hemingway*, 363 Mass. 184, 199 (1973), where we held that "in a rental of any premises for dwelling purposes . . . there is an implied warranty that the premises are fit for human occupation. . . . This warranty . . . cannot be waived by any provision in the lease or rental agreement."

The defendants contend that this provision is rendered perfectly lawful by the inclusion, in small print, of words to the effect that the implied warranty is disclaimed "except so far as governmental regulation, legislation or judicial enactment otherwise requires." We disagree. General Laws c. 93A, § 2 (*b*), expressly incorporates judicial interpretations of the Federal Trade Commission Act, 15 U.S.C. § 45 (a) (1) (1982). Under that statute, an act or practice is deceptive if it possesses "a tendency to deceive." *Trans World Accounts, Inc.* v. *FTC*, 594 F.2d 212, 214 (9th Cir. 1979). In determining whether an act or practice is deceptive, "regard must be had, not to fine spun distinctions and arguments that may be made in excuse, but to the effect which it might reasonably be expected to have upon the general public." *P. Lorillard Co.* v. *FTC*, 186 F.2d 52, 58 (4th Cir. 1950).

Taken as a whole, paragraph eight clearly tends to deceive tenants with respect to the "landlord's obligation to deliver and maintain the premises in habitable condition." *Boston Hous. Auth.* v. *Hemingway, supra* at 198. Paragraph eight suggests, as the judge found, that the implied warranty of habitability is "the exception and not the rule, if it exists at all." Indeed, the average tenant, presumably not well acquainted with our decision in *Boston Hous. Auth.* v. *Hemingway, supra*, is likely to interpret the provision as an absolute disclaimer of the implied warranty of habitability. The conjunction of bold face and

small print suggests, as the judge recognized, "a clear and calculated effort to further mislead tenants." It suggests to tenants that their signatures on the lease constitute a waiver of their right to habitable housing.

Paragraph five of the standard apartment lease, which the judge below characterized as "an unabashed attempt to annul or render less meaningful" rights guaranteed by the State sanitary code, seems drafted with the same impermissible purpose which evidently motivated paragraph eight. It provides that "[u]nless Tenant shall notify Landlord to the contrary within two (2) days after taking possession of the premises, the same and the equipment located therein shall be *conclusively presumed* to be in good, tenantable order and condition in all respects, except as any aforesaid notice shall set forth" (emphasis added). So even if tenants are sufficiently sophisticated to understand that paragraph eight is not an absolute disclaimer of the right to habitable housing, paragraph five unlawfully suggests that this right is waived unless notification is made within two days after the tenant moves in. Consequently, we conclude that there was no error in the judge's conclusion that paragraphs five and eight were deceptive and unconscionable, particularly when those provisions are viewed in the context of the fundamental nature of the implied warranty of habitability.[7]

b. *Injury Under G. L. c. 93A.* The defendants next contend that, regardless of the alleged illegality of the lease, the plaintiffs have not suffered sufficient "injury" to support an award of damages under G. L. c. 93A, § 9.[8] The defendants argue that,

---

[7] The judge of the Housing Court also found five other provisions of the lease agreement to be unlawful. No purpose would be served by discussing them in depth here.

[8] General Laws c. 93A, § 9 (1), as appearing in St. 1979, c. 406, § 1, provides that: "Any person, other than a person entitled to bring action under section eleven of this chapter, who has been injured by another person's use or employment of any method, act or practice declared to be unlawful by section two or any rule or regulation issued thereunder or any person whose rights are affected by another person violating the provisions of clause (9) of section three of chapter one hundred and seventy-six D may bring an action in the superior court, or in the housing court as provided

even though the 1979 amendment to c. 93A deleted the requirement that the plaintiffs show some loss of "money or property,"[9] nonetheless the plaintiffs still must show some quantum of harm. The defendants further argue that the mere presence of unlawful provisions in the lease does not constitute an injury, where the landlord never attempted to enforce the unlawful provisions, and where the plaintiffs have conceded, for the purposes of this motion, that they have never even read the offensive clauses in the lease.

In *Baldassari* v. *Public Fin. Trust*, 369 Mass. 33, 44-46 (1975), we held that a plaintiff's claims under c. 93A should be dismissed where the plaintiff alleged "severe emotional distress," and not the loss of "money or property" required by the version of c. 93A then in effect. The Legislature then amended the statute, providing a right of action to "[a]ny person . . . who has been injured by another person's use or employment of any method, act or practice declared to be unlawful by section two or any rule or regulation issued thereunder." The 1979 amendment appears to have been, in part, a reaction to the restrictiveness of our holding in *Baldassari* v. *Public Fin. Trust, supra.* See Greaney, Consumer Protection Law, 65 Mass. L. Rev. 88, 89 (1980); Gitlin, Consumer Law, 1979 Ann. Survey Mass. Law 333, 351-353. In fact, we have already recognized that the changes in statutory language "substantially broadened the class of persons who could maintain

in section three of chapter one hundred and eighty-five C whether by way of original complaint, counterclaim, cross-claim or third-party action, for damages and such equitable relief, including an injunction, as the court deems to be necessary and proper."

[9] The predecessor to G. L. c. 93A, § 9 (1), provided that: "Any person who purchases or leases goods, services or property, real or personal, primarily for personal, family or household purposes and thereby suffers any loss of money or property, real or personal, as a result of the use or employment by another person of an unfair or deceptive act or practice declared unlawful by section two or by any rule or regulation issued under paragraph (c) of said section two may, as hereinafter provided, bring an action in the superior court whether by way of original complaint, counterclaim, cross-claim or third-party action for damages and such equitable relief, including an injunction, as the court deems to be necessary and proper." St. 1970, c. 736, § 1, as amended by St. 1971, c. 241, and further amended by St. 1978, c. 478, § 45.

actions under G. L. c. 93A, § 9." *Van Dyke* v. *St. Paul Fire & Marine Ins. Co.*, 388 Mass. 671, 675 (1983).

"Statutes are to be construed in the light of the preexisting common and statutory law with reference to the mischief probably intended to be remedied." *Ferullo's Case,* 331 Mass. 635, 637 (1954). We have noted that G. L. c. 93A is a "statute of broad impact," which forms a "comprehensive substantive and procedural business and consumer protection package." *Slaney* v. *Westwood Auto, Inc.*, 366 Mass. 688, 693 (1975). "[T]echnicalities are not to be read into the statute in such a way as to impede the accomplishment of substantial justice." *Baldassari* v. *Public Fin. Trust, supra* at 41. We further note that tenants are among those for whose benefit the Consumer Protection Act was passed, Rice, New Private Remedies for Consumers: The Amendment of Chapter 93A, 54 Mass. L. Q. 307, 313 (1969); see, e.g., *Wolfberg* v. *Hunter*, 385 Mass. 390 (1982), and we have traditionally been zealous in protecting tenants who have shown that their landlords, for whatever reason, fail to fulfil the obligations imposed upon them by statute and decisional law. See, e.g., *Berman & Sons* v. *Jefferson*, 379 Mass. 196 (1979). The question before us now is a close one, but in light of all the circumstances we believe that the tenant class has been "injured" within the meaning of G. L. c. 93A.

The result we reach hinges on our interpretation of the word "injury." "The interpretation of well-defined words and phrases in the common law carries over to statutes" as long as such interpretation "appear[s] fitting and in the absence of evidence to indicate contrary intent." 2A C. Sands, Sutherland Statutory Construction § 50.03 (4th ed. 1983). See *Comey* v. *Hill*, 387 Mass. 11, 15 (1982). According to the Restatement (Second) of Torts § 7 (1965), the term "injury" denotes "the invasion of any legally protected interest of another." Moreover, "[t]he most usual form of injury is the infliction of some harm; but there may be an injury although no harm is done." Restatement (Second) of Torts § 7 comment a (1965). As Professor McCormick has explained, "What the law always requires as a basis for a judgment for damages is not loss or damage, but *"injuria,"*

and hence damages are allowed, though there has been no loss or damage." C. McCormick, Damages § 20 (1935). See, e.g., *Rosnick* v. *Marks*, 218 Neb. 499, 504-505 (1984).

General Laws c. 93A, § 9 (3), provides for recovery "of actual damages or twenty-five dollars, whichever is greater." Accordingly, under circumstances where there has been an invasion of a legally protected interest, but no harm for which actual damages can be awarded, we conclude that the statute provides for the recovery of minimum damages in the amount of $25. Construed in this manner, the recent amendment to G. L. c. 93A merely conforms the statutory scheme of consumer remedies to that which prevails under the common law doctrine that, in certain circumstances, plaintiffs are entitled to nominal damages even where no actual damages are shown. See, e.g., *Nathan* v. *Tremont Storage Warehouse, Inc.*, 328 Mass. 168, 171 (1951) (plaintiff entitled at least to nominal damages for breach of contract); *Hooten* v. *Barnard*, 137 Mass. 36, 37 (1884) ("As the plaintiff proved an invasion of her rights by the defendant, she was entitled to recover at least nominal damages"). See generally *Nappe* v. *Anschelewitz, Barr, Ansell & Bonello*, 97 N.J. 37, 45-48 (1984).

Our interpretation of the injury requirement is consistent with opinions of the United States Supreme Court which have elucidated the "injury-in-fact" requirement of art. III of the Constitution of the United States. That Court recognized, in *Linda R. S.* v. *Richard D.*, 410 U.S. 614, 617 n.3 (1973), that "Congress may enact statutes creating legal rights the invasion of which creates standing, *even though no injury would exist without the statute*" (emphasis added). See *Warth* v. *Seldin*, 422 U.S. 490, 500 (1975). As the Court recently emphasized, "The actual or threatened injury . . . may exist solely by virtue of 'statutes creating legal rights.'" *Havens Realty Corp.* v. *Coleman*, 455 U.S. 363, 373 (1982), quoting *Warth* v. *Seldin, supra*. There is no reason to conclude that our Legislature does not possess a similar authority, and we conclude that, in amending G. L. c. 93A, § 9, the Legislature exercised its prerogative to create a legal right, the invasion of which, without more, constitutes an injury.

Consumer protection legislation in force in other jurisdictions does not invariably require proof of actual harm. For example, "[i]t is well settled . . . that proof of actual deception or damages is unnecessary to a recovery of statutory damages" under the Truth in Lending Act, 15 U.S.C. § 1640 (1982). *Gambardella* v. *G. Fox & Co.*, 716 F.2d 104, 108 n.4 (2d Cir. 1983). *Brown* v. *Marquette Sav. & Loan Ass'n*, 686 F.2d 608, 614 (7th Cir. 1982). *Dryden* v. *Lou Budke's Arrow Fin. Co.*, 630 F.2d 641, 647 (8th Cir. 1980). The Supreme Court of California has similarly construed the California Consumer Legal Remedies Act, Cal. Civ. Code §§ 1770 et seq. (Deering 1981). In *Kagan* v. *Gibraltar Sav. & Loan Ass'n*, 35 Cal. 3d 582, 593 (1984), the court held that "[a]s it is unlawful to engage in any of the deceptive business practices enumerated in section 1770, consumers have a corresponding legal right not to be subjected thereto. Accordingly, we interpret broadly the requirement of section 1780 that a consumer 'suffer[] any damage' to include the infringement of any legal right as defined by section 1770" (footnote omitted). Finally, we note that other courts, interpreting a range of statutes, have accepted the Restatement's construction of the term injury as "the invasion of any legally protected interest." See *Rosnick* v. *Marks*, 218 Neb. 499, 504-505 (1984); *Roth* v. *Cottrell*, 112 Cal. App. 2d 621, 624-625 (1952); *Fox* v. *Industrial Comm'n*, 162 Ohio St. 569, 575 (1955).

In so interpreting the injury requirement of G. L. c. 93A, § 9, we do not mean to authorize purely "vicarious suits by self-constituted private attorneys-general." *Baldassari* v. *Public Fin. Trust, supra* at 46, quoting Rice, New Private Remedies for Consumers: The Amendment of Chapter 93A, 54 Mass. L. Q. 307, 314 (1969). One could hardly characterize the relationship of these plaintiffs to the illegal lease at issue here as vicarious. We need not, and do not, decide whether we would reach a similar result under G. L. c. 93A, § 9, in other circumstances. See *Van Dyke* v. *St. Paul Fire & Marine Ins. Co.*, 388 Mass. 671, 677-678 (1983). Here the plaintiffs are tenants of the defendants, and the illegality of the defendants' lease is the subject of the instant c. 93A action.

c. *Treble Damages.* The Housing Court judge found that the landlord responded to the plaintiffs' demand letter "in bad faith, with knowledge or reason to know that his insistence on including the challenged clauses in the tenants' leases violated G. L. c. 93A, § 2." On this ground he awarded treble damages.[10] Without reaching the issue of whether the defendants' response was made in bad faith, we conclude that the judge erred in trebling the award of statutory damages.

In circumstances where the plaintiff is entitled to treble damages under G. L. c. 93A, and where the actual damages, when trebled, are less than $25, then the plaintiff is entitled to the statutory amount of $25, instead of $75. *McGrath* v. *Mishara,* 386 Mass. 74, 87 (1982). It follows that in this case, where no actual damages were shown, the award must be in the amount of $25, and not a multiple thereof.

The treble damage provision in G. L. c. 93A "reflect[s] the Legislature's displeasure with the proscribed conduct and its desire to deter such conduct and encourage vindicative lawsuits." *McGrath* v. *Mishara, supra* at 85. We conclude that the award of statutory damages, in circumstances where there is no actual harm, adequately fulfils these same purposes. See M. Minzer, J. Nates, C. Kimball, D. Axelrod, R. Goldstein, Damages in Tort Actions, § 2.12 (1982); Rice, Remedies, Enforcement Procedures and the Duality of Consumer Transaction Problems, 48 B.U.L. Rev. 559, 573 (1968). Thus, trebling the statutory amount is unnecessary to fulfil the aims of the statute. We further note that the inference we draw as to legislative intent is consistent with the common law rule, prevailing in many jurisdictions, that where no actual harm is shown, no punitive damages may be awarded. See, e.g., *Skipper* v. *South Cent.*

---

[10] According to G. L. c. 93A, § 9 (3), as appearing in St. 1979, c. 406, § 2, "recovery shall be in the amount of actual damages or twenty-five dollars, whichever is greater, or up to three but not less than two times such amount if the court finds that the use or employment of the act or practice was a willful or knowing violation of said section two or that the refusal to grant relief upon demand was made in bad faith with knowledge or reason to know that the act or practice complained of violated said section two. In addition, the court shall award such other equitable relief, including an injunction, as it deems to be necessary and proper."

*Bell Tel. Co.*, 334 So. 2d 863, 865 (Ala. 1976); *Kluge* v. *O'Gara*, 227 Cal. App. 2d 207, 209 (1964); *Pringle Tax Serv.* v. *Knoblauch*, 282 N.W.2d 151, 153-154 (Iowa 1979); *Cristman* v. *Voyer*, 92 N.M. 772, 775 (1979); *Cates* v. *Barb*, 650 P.2d 1159, 1161 (Wyo. 1982); Sales & Cole, Punitive Damages: A Relic That Has Outlived Its Origins, 37 Vand. L. Rev. 1117, 1145 (1984); but see *Nappe* v. *Anschelewitz, Barr, Ansell & Bonello*, 97 N.J. 37, 50-51 (1984). Because the Legislature has determined that an award of $25 suffices as nominal damages, it would be incongruous and inconsistent with that determination to infer that in any circumstances the Legislature intended that the nominal sum should be multiplied.

d. *Multiplication of Statutory Damages by Number of Individuals in Class.* The defendants next argue that, even if the class is entitled to statutory damages, the statutory amount should not be multiplied by the number of individuals in the class. Instead, the defendants contend that they are only liable for a single award of $25, which should be divided among all of the class members.[11]

We disagree. There are States where consumer protection legislation does not provide for an award of nominal damages to each member of a class, though nominal damages in individual actions are available. E.g., Mich. Comp. Laws § 445.911 (1979); N.H. Rev. Stat. Ann. § 358-A:10 (1984). In fact, this is the design of our Consumer Credit Cost Disclosure Statute, G. L. c. 140D, § 32. However, the recent "amendment to Chapter 93A in no way distinguishes

---

[11] General Laws c. 93A, § 9 (2), inserted by St. 1969, c. 690, provides that: "Any persons entitled to bring such action may, if the use or employment of the unfair or deceptive act or practice has caused similar injury to numerous other persons similarly situated and if the court finds in a preliminary hearing that he adequately and fairly represents such other persons, bring the action on behalf of himself and such other similarly injured and situated persons; the court shall require that notice of such action be given to unnamed petitioners in the most effective practicable manner. Such action shall not be dismissed, settled or compromised without the approval of the court, and notice of any proposed dismissal, settlement or compromise shall be given to all members of the class of petitioners in such manner as the court directs."

between the relief that is available in the individual and class suits." Rice, 54 Mass. L. Q., *supra* at 319. We conclude that the defendants' interpretation of G. L. c. 93A, § 9 (2), would effectively eviscerate what was intended to be "a device for vindicating claims which, taken individually, are too small to justify legal action but which are of significant size if taken as a group." Rice, *supra* at 316. See H. Newberg, Class Actions § 1010.5 (c) (1977). Dividing a single award of statutory damages among all class members would discourage the assertion of consumer class actions where injuries have taken place, though actual damages may be insignificant or nonexistent, and would thus be contrary to one of the basic purposes of the statute.

We note that the plaintiffs initially asserted a claim for statutory damages for each of the eight allegedly illegal provisions in the lease. Mindful of "piling on sanctions unthinkingly once an illegality is found," *Town Planning & Eng'g Assocs.* v. *Amesbury Specialty Co.*, 369 Mass. 737, 746 (1976), the judge only allowed one award of statutory damages per tenant. The plaintiffs have not cross appealed this ruling, and, accordingly, we need not consider it. See *Boston Edison Co.* v. *Boston Redevelopment Auth.*, 374 Mass. 37, 43 n.5 (1977).

e. *Composition of Class Entitled to Damages.* After the plaintiffs moved for clarification of the Housing Court's initial order, the judge defined the class as "those individuals who, on or after September 1, 1980 resided in the subject premises under the agreements here challenged or who so occupied while refusing to enter such agreements." In accord with this determination, the judge also ruled that damages were to be awarded per each individual occupant, and not merely per leasehold. We conclude that this was error, and that statutory damages should only have been awarded on a per leasehold basis.[12]

---

[12] The defendants have not squarely raised the issue of the composition of the class which is entitled to damages. See Mass. R. A. P. 16 (a) (4), as amended, 367 Mass. 919 (1975). Nonetheless, we believe that the argument is implicit in their appeal of the judge's multiplication of the statutory award, and we consider it to avoid the injustice which might otherwise result. See, e.g., *McLeod's Case*, 389 Mass. 431, 434 (1983).

General Laws c. 93A requires an injury before an award of even nominal damages is justified. The only injury at issue here involves the leaseholder's right to be free from deceptive clauses in a rental agreement. Accordingly, only those who were tenants on or after September 1, 1980, and who were either a party to the illegal lease agreement, or who were asked to sign the agreement, have been injured under c. 93A. This result is consistent with the contents of the plaintiffs' demand letter, which was sent only on behalf of "all tenants . . . who have signed, or who have been asked to sign" leases incorporating illegal provisions. Of course, if the landlord had attempted to enforce an illegal provision against any occupant, then such occupant, regardless of whether he or she had signed the lease, may well have been injured and thus would be entitled to damages. Moreover, all occupants may well have been entitled to recover if injured by a breach of the implied warranty of habitability. But these are not the circumstances present here. The case presents an injury to the leaseholder, and thus damages are to be awarded on a leasehold basis.[13]

f. *Adequacy of the Demand Letter.* The defendants contend that the demand letter was defective because it failed to describe adequately the injury suffered. See *Slaney* v. *Westwood Auto, Inc.*, 366 Mass. 688, 704 (1975).[14] This claim is meritless. The plaintiffs' c. 93A demand repeatedly and emphatically

---

[13] Even though we have thus sharply limited the number of those permitted to recover, and have also limited recovery to $25 for each person, it seems clear from the record that the number of eligible tenants is such that the total amount awarded may be many thousands of dollars.

[14] General Laws c. 93A, § 9 (3), as appearing in St. 1979, c. 406, § 2, provides in pertinent part that: "At least thirty days prior to the filing of any such action, a written demand for relief, identifying the claimant and reasonably describing the unfair or deceptive act or practice relied upon and the injury suffered, shall be mailed or delivered to any prospective respondent. Any person receiving such a demand for relief who, within thirty days of the mailing or delivery of the demand for relief, makes a written tender of settlement which is rejected by the claimant may, in any subsequent action, file the written tender and an affidavit concerning its rejection and thereby limit any recovery to the relief tendered if the court finds that the relief tendered was reasonable in relation to the injury actually suffered by the petitioner."

stated that the plaintiffs were injured by the inclusion of several illegal clauses in the standard apartment lease. The inclusion of the clauses, as we have noted, constitutes an injury cognizable under G. L. c. 93A regardless of a showing of actual harm. The defendants further urge that the demand letter was defective because it requested attorneys' fees. We agree that the demand for fees at that stage was improper, *Kohl* v. *Silver Lake Motors, Inc.*, 369 Mass. 795, 801 (1976), but conclude that this should not adversely affect the plaintiffs' claim for statutory damages.

Finally, the defendants emphasize that the demand letter requests that the defendants enter into a consent decree. Since the entry of a consent decree is, in part, a judicial act, see, e.g., *United States* v. *ITT Continental Baking Co.*, 420 U.S. 223, 236-237 n.10 (1975), a demand that the defendants enter into such an agreement is at odds with one of the primary goals of G. L. c. 93A, i.e., encouraging "out-of-court settlements." *Wolfberg* v. *Hunter*, 385 Mass. 390, 398 (1982). Nonetheless, since the defendants, in response, did not even suggest a willingness to enter into a private agreement to eliminate the illegal clauses, we conclude that the defendants were not prejudiced by this improper demand, and thus that reference to a consent decree should not bar relief under c. 93A.

g. *Reasonableness of the Defendants' Response.* The defendants also claim error in the judge's finding that the relief tendered by the defendants was not "reasonable in relation to the injury actually suffered" by the plaintiff class. G. L. c. 93A, § 9 (3). With respect to the class claim, the defendants only offered not to "enforce nor attempt to enforce any provision of any lease which runs contrary to law and the law's interpretation by the Courts." We agree with the judge that this offer was "too indefinite . . . to be regarded as reasonable." *Patry* v. *Harmony Homes, Inc.*, 10 Mass. App. Ct. 1, 6 (1980). Tenants have suffered injury as a result of the inclusion of several illegal clauses in the standard lease agreement. Reason-

able relief, "in relation to the injury," would only be afforded by an agreement to remove the offensive clauses.[15]

4. *Plaintiff Allisan's Cross Appeal.*

a. *G. L. c. 186, § 14.* Allisan claims that the judge erroneously concluded that G. L. c. 186, § 14, requires "substantial" interference with her quiet enjoyment of the premises, and thus that he erroneously denied her claim under that statute.[16] We disagree. "The phrase 'quiet enjoyment' is a familiar term in landlord-tenant law, signifying the tenant's right to freedom from *serious* interferences with his tenancy . . ." (emphasis added). *Simon* v. *Solomon*, 385 Mass. 91, 102 (1982). See *Winchester* v. *O'Brien*, 266 Mass. 33, 36 (1929) (injury must be "substantial" to afford ground for relief). The judge concluded that the conduct of the defendants' agent did not substantially interfere with her right to quiet enjoyment, and this conclusion was not clearly erroneous.

b. *Intentional Infliction of Emotional Distress.* Allisan also contends that the trial judge erred in denying her claim for damages based on the theory of intentional infliction of emotional distress. The judge concluded that the landlord's agent "was playing hardball," and that "the plaintiff did suffer distress as a result of the defendant's actions." Nonetheless, he found for the defendants, on the ground that the conduct was not "beyond all possible bounds of decency," or "utterly intolerable in a civilized community." *Agis* v. *Howard Johnson Co.*, 371 Mass. 140, 145 (1976), quoting Restatement (Second) of Torts

---

[15] The judge also found that the plaintiffs were entitled to rescission of the rental contracts "on account of the pervasive illegality inherent in the leases." The defendants have not appealed from this ruling.

[16] The relevant portion of G. L. c. 186, § 14, as amended through St. 1974, c. 192, § 1, provides that: "[A]ny lessor or landlord who directly or indirectly interferes with the quiet enjoyment of any residential premises by the occupant, or who attempts to regain possession of such premises by force without benefit of judicial process, shall be punished by a fine of not less than twenty-five dollars nor more than three hundred dollars, or by imprisonment for not more than six months. Any person who commits any act in violation of this section shall also be liable for actual and consequential damages or three month's rent, whichever is greater, and the costs of the action, including a reasonable attorney's fee, all of which may be applied in setoff to or in recoupment against any claim for rent owed or owing."

§ 46 comment d (1965). These findings, on this record, were not clearly erroneous.

5. *Conclusion.*

The judgment for the defendants as to the individual claims of Allisan is affirmed. The judgment in the class action is vacated and the case remanded to the Housing Court for (1) the entry of judgment in the amount of $25 for each member of the class who, on or after September 1, 1980, lived on the premises owned or managed by the defendants, and who had signed or been asked to sign the offensive lease, (2) the establishment and award of attorneys' fees, including fees for services rendered in this appeal, for the plaintiffs' counsel, the judge having reserved that matter pending this appeal, and (3) the administration and distribution of the class action award.

*So ordered.*