O’Toole, J.
What we have here is a failure to communicate. In the circumstances, the failure was serious enough that we conclude as a matter of law that it was an unfair commercial act or practice within the meaning of the Consumer Protection Act, G.L. c. 93A.
The plaintiff, Kevin O’Keeffe, delivered two Oriental rugs to the corporate defendant, Superior Carpet, Inc. (“Superior”), for cleaning and storage. After several years had passed, O’Keeffe asked for the return of the rugs from storage. The individual defendant, Paul Santacroce, was then in charge of Superior’s business. One of the rugs was returned after a short delay; the other could not be found. Eventually O’Keeffe brought suit for the damages caused by the defendants’ inability to return the second rug. He also sought redress for what he perceived as the undue delay by the defendants in attending to his claim. His Complaint was framed in three counts, alleging respectively violation of Chapter 93A, the common law tort of conversion, and breach of the contract of bailment. The defendants’ Answer amounted to a general denial. After trial, the judge found for the plaintiff on the contract count only and awarded damages in the sum of four thousand dollars plus interest from the date of breach, which he determined to have been February 9, 1983. The judge found for the defendants on the other two counts. Both sides have appealed various rulings by the trialjudge. The defendants have also appealed the allowance of a motion to amend the Complaint.
The trial judge made extensive findings of fact, which are annexed as Appendix A to this opinion. Reference will be made to the facts as necessary to the discussion of the issues presented.
I. The Plaintiff's Appeal
A. Violation if Chapter 93A by Failing to Communicate The principal issue presented by the plaintiffs appeal is whether the judge *109 correctly ruled that the facts found by him did not make out a violation of Chapter 93A. The plaintiff had requested that the judge rule as follows:
“8. The defendants’ conduct toward O’Keeffe when O’Keeffe attempted to recover Rug 1 (the missing rug) was an unfair or deceptive act or practice in violation of c. 93A, § § 2 and 9.”
The judge’s ruling upon this request was, “Denied. See findings.”
In his Findings (a copy of which was appended to the Report), the judge addressed in some detail the question whether the defendants had violated Chapter 93A. He concluded as follows:
“The unexplained disappearance of plaintiffs rug from defendants’ premises is not in itself an unfair or deceptive act within the meaning of M.G.L. c. 93A, §§ 2 and 9.
“Defendants’ behavior subsequent to plaintiffs demand that his rugs be returned was not so unreasonable as to constitute an unfair or deceptive act within the meaning of M.G.L. c. 93A, § § 2 and 9.”
We agree with the first conclusion but disagree with the second.
We note first that the question is a legal one, not a purely factual one, and is thus renewable. See Commonwealth v. DeCotis, 366 Mass. 234, 240 (1974).[2] The trial judge is entitled to deference with respect to his findings of fact, but we are not bound by his conclusions as to their significance. See Datacomm Interface, Inc. v. Computerworld, Inc., et al., 396 Mass. 760, 777 (1986), where the trial court’s conclusion that facts found by a master did not demonstrate a violation of Chapter 93A was reversed. The judgment whether a particular set of facts amounts to a violation of the legal standard ought not vary with the fact finder. Review of such a judgment is precisely the appellate function.
A resume of salient facts is useful here, with reference made to where they are set forth in the Report:
On February 9, 1983, several years after the rugs had first been delivered into Superior’s custody, O’Keeffe visited its place of business and sought to retrieve them. Santacroce, newly in charge of the business for Superior, could not locate either rug. [R. 4 ]. Two days later, on February 11, one of the rugs was found and returned to O’Keeffe. No demand was made by Santacroce for any accumulated storage charges. [R. 5]
Between February and June, Santacroce searched diligently for the missing rug. [R. 5 ] During this period, O’Keeffe made several unsuccessful attempts to get. in touch with Santacroce by telephone.[3] [R. 11.] Sometime in June, Santacroce concluded that the rug could not be found. [R.5.]
On June 11, O’Keeffe wrote to Santacroce expressing dissatisfaction with the manner in which Superior was responding to the problem of the missing rug. In his letter, he fixed the value of the rug at $4,000 and offered to accept in its place a rug of comparable value. He threatened legal action if not satisfied by June 30. Santacroce did not respond to the letter. [R. 6.)
Between June and September O’Keeffe made several more unsuccessful attempts to reach Santacroce by telephone. In July, Santacroce, without notifying O’Keeffe, spoke with an experienced rug merchant about the possibility of getting a comparable replacement rug. [R. 6.]
O’Keeffe finally spoke by phone with Santacroce in October 1983. In that conversation Santacroce told him that his rug could not be found. [R. 6. ] From *110 the judge’s findings as a whole it is clear he concluded that this was the first communication about the rug from the defendants to the plaintiff since the previous February ll.[4] It is also apparent that O’Keeffe had for some time assumed that the rug would not be found.
In sum, according to the findings, what Santacroce did, on behalf of Superior, was to search diligently and thoroughly for the missing rug. After he had determined in June that the rug was lost, he even took some steps toward finding a suitable replacement. What he did not do, however, was to communicate at all with O’Keeffe between February and October about the status of the search for the missing property, despite a strongly worded letter and a number of attempted but unsuccessful telephone calls from O’Keeffe.
We hold that the defendants’ failure to communicate with their customer about his rug for eight months in all, and for four months after Santacroce had himself concluded that the rug could not be found, is an unfair commercial act or practice within the meaning of Chapter 93A, § 2. It is inconsistent with the purpose of Chapter 93A for a merchant to keep a customer such as the plaintiff in the dark about the status of a complaint or inquiry under the circumstances and for the length of time involved here. Cf. Antonelli v. Delta Airlines, Inc., 1986 Mass. App. Div. 75. An obligation to keep the customer advised is all the more compelling where, as here, the plaintiff was actively endeavoring to get the defendants’ attention to find out where things stood.
One of the important means by which Chapter 93A seeks to achieve “a more equitable balance in the relationship of consumers to persons conducting business activities” is by promoting “proper disclosure of information.” Lowell Gas Co. v. Attorney General, 377 Mass. 37, 51 (1979). Thus, for example, the failure of a person in business to provide material information[5] may be a violation of Chapter 93A even if it would not constitute a wrong under common law principles. Slaney v. Westwood Auto, Inc., 366 Mass. 688, 703 (1975). Information can be important to the consumer not only in deciding whether to enter into a transaction but also in deciding how to proceed if and when problems arise in the course of a business relationship. It can be particularly important where property entrusted by the consumer to a business person appears to be missing. A bailee’s unique position to know the relevant facts supports his bearing the burden of proof as to whether he was negligent, in caring for the bailed goods. Knowles v. Gilchrist Co., 362 Mass. 642, 651 (1972).[6] The same considerations support the proposition that a bailee must act reasonably to advise a customer about the status or condition of bailed goods.
*111 In the present case, having taken four months to determine that O’Keeffe’s rug was lost, the defendants, notwithstanding that determination, ignored O’Keeffe’s June 11 letter and avoided, at least by inaction, any communications with him at all for another four months. This was not a “proper disclosure of information.” See, Lowell Gas Co. v. Attorney General, supra, at 51. O’Keeffe was entitled to reasonably prompt notice that the defendants themselves had concluded the rug committed to their custody was lost.
The fact of the loss is after all only the first part of the issue between the parties. What recompense, if any, is to be given for the loss is the second, and critical, point. It is really what “consumer protection” is all about. Delay in resolving the first question necessarily prevents resolution of the second, and thereby thwarts the goals Chapter 93A was enacted to promote.
The trial judge explained his decision that the defendants had not violated Chapter 93A by observing that O’Keeffe suspected early on that his rug would not be returned, that he was a sophisticated person who considered the possibility of legal action, and that he was not misled or “induced into a detrimental course of conduct by the defendants.” [Findings, p. 7.] None of these considerations weakens the conclusion that the defendants’ behavior in the circumstances established in this case was unfair in violation of Chapter 93A, § 2.
In the first place, a merchant cannot be relieved of the obligation to keep his customers reasonably informed simply because the customer may have come, on the basis of what he does know, to his own unhappy conclusion that his property would probably not be found. The idea is pernicious. The longer the merchant were to delay in providing information, the more resigned the customer would likely become that his property has been lost. Delay would thus ultimately supply its own excuse. This makes no sense. A merchant can fulfill his obligation to inform only by providing information. What the customer already suspects does not reduce the duty.
Nor is the subjective impact of the failure to communicate upon the particular customer important. The judge thought the plaintiff to be a man of “advanced education” and not a “naive consumer.” These conclusions, however well-founded in the evidence are beside the point. The question is not whether the plaintiff was actually deceived, as it would be in an action claiming fraud or misrepresentation. See, Slaney v. Westwood Auto, Inc., supra, at 703-4. In prohibiting unfair or deceptive trade acts or practices, Chapter 93A makes no distinctions among the kinds of consumers it protects. Even sophisticated people are to be protected from unfairness and deception.
Moreover, besides providing compensatory redress for injuries suffered by consumers, Chapter 93A also seeks to affect commercial behavior. To this end, misbehavior which results in no actual damages still is remediable under the statute. G.L. c. 93A, § 9 (3);Leardi v. Brown, 394 Mass. 151, 157-61 (1985). The • defendants’ conduct is the object of judgment, and it is to be judged without reference to whether the plaintiff knew enough to enforce correct behavior by resort to the legal process. Indeed, one of the aims of Chapter 93A is to encourage commercial practices that reduce the need for litigation enforcement, and even where litigation appears imminent the law’s purpose is to require a final effort at extra-judicial resolution. To hold Chapter 93A inapplicable if the customer knows enough to think about suing would distort these purposes.
Thus, we conclude that the trial judge should have allowed the plaintiffs Request 8. Since no actual damages were shown to have been caused by the delay in communication, the plaintiff is entitled to an assessment of $25 under *112 Count I, G.L. c. 93A, § 9 (3). These minimum statutory damages may not be multiplied.[7] Leardi v. Brown, supra, at 162-63. He is also entitled to an assessment of attorney’s fees, G.L. c. 93A, § 9 (4), which for obvious reasons has not been done. See discussion below at pages 11-12.
B. Violation of Chapter 93A by Failing to Consummate Settlement
After the parties had finally spoken to each other in October 1983, they began to explore the possibility of finding a comparable replacement rug as a way of resolving O’Keeffe’s claim. Two experts, one acting for each side, helped in the process. In February or March 1984, O’Keeffe selected a rug having a fair market value of $4,000 which the defendants would give to him as a replacement for his lost property. The defendants were able to purchase the rug for $2,800. Before agreeing to deliver the rug, however, Santacroce demanded that O’Keeffe pay what Santacroce claimed were accumulated unpaid cleaning and storage charges for O'Keeffe’s rugs in the amount of $500. O’Keeffe'refused, and what had nearly been a successful settlement fell apart. [R. 5.]
The plaintiff made the following two Requests, which were denied by the trial judge:
“13. The defendants’ failure to grant the requested relief upon demand was made in bad faith with knowledge or reason to know that the acts or practices complained of violated c. 93A, § 2.
“14. The defendants’ demand that O’Keeffe pay cleaning charges which had already been paid and that he pay storage charges up to February 9,1983 when the defendants did not have custody of Rug 1 at that time and could not demonstrate how long they did have custody of Rug 1 was an unfair or deceptive act or practice in violation of c. 93A, §§ 2 and 9, made knowlingly and willfully.”
By these requests, the plaintiff urges that the breakdown of settlement negotiations by the late injection of an additional term by Santacroce also constituted an unfair practice under Chapter 93A. We do not agree.
As the trial judge correctly pointed out, “the fact that the parties were not able to settle t.ieir differences is not a per se violation of Chapter 93A or proof that the defendants were acting in bad faith.” Settlement negotiations may cover a broad scope of issues between the parties, including on occasion issues that both parties may have previously considered to have been closed. Whether any money was owed on account of storage prior to February 1983 - even if only with respect to the rug that was returned - was a legitimate area for negotiation in discussions aimed at reconciling all outstanding issues. By nature and necessity, settlement negotiations are fluid. The fact that the defendants initially made no demand for storage charges might have some significance as evidence in litigation, but it does not prevent the matter from being raised in settlement talks, absent bad faith. Here, there was no finding of bad faith. The trial judge was not persuaded to the plaintiffs position that the defendants’ demand for storage charges after a settlement had appeared likely was done for the purpose of obstructing the settlement. There is nothing in the reported evidence that should cause us to disturb that conclusion. Requests 13 and 14 were properly denied.
The judge also denied the following Request:
“15. O’Keeffe is entitled to recover reasonable costs, including his *113 expert’s fees, and attorney’s fees incurred in connection with this matter.”
As we have already noted, the plaintiff, prevailing on his claim under Chapter 93A, is entitled to reasonable attorneys’ fees. G.L. c. 93A, § 9 (4). The judge obviously denied the Request because of his ruling, which we reverse, that there had been no violation of Chapter 93A. So much of the Request as pertained to attorneys’ fees ought to have been allowed.
The plaintiff will also be entitled to statutory costs of suit. See Dist./Mun. Cts. R. Civ. P., Rule 54 (d). Otherwise, no basis is indicated for the payment of other expenses, such as fees of an expert. That portion of the Request was properly ; denied.
II. The Defendants'Appeal
The defendants have appealed from the trial judge’s denial of several Requests for Rulings of Law, from his allowance of a motion to amend the Complaint, and from his establishment of the date from which interest should run on the damages assessed under the contract claim set forth in Count III.
Requests 10-15, which are set forth in Appendix B to this opinion, are essentially requests for findings of fact. They are all based upon the factual predicate that the storage receipt given to O’Keeffe when he delivered his rugs into Superior’s custody constituted part or all of the contract between the parties. The trial judge expressly found to the contrary. He said:
“The written invoice and the limitation of liability provisions contained thereon and received by the plaintiff several days later, was not apart of the contract and are not binding on the plaintiff.. The rather substantial provisions of the invoice purporting to limit defendants’ liability were not discussed between the parties; and at the formation of the contract the parties did not agree to future modifications of the contract. Although plaintiff acknowledged receipt of the invoice, there was no evidence from which the court might infer that plaintiff accepted, acquiesed in or otherwise adopted the provision of the invoice as part of its bargain with Superior.” Findings, pp. 10-11.
It is obvious that the judge carefully evaluated the evidence and determined the factual issue against the defendants. The Requests were properly denied.
The defendants also made this Request:
“17. As a matter of law, the plaintiff is bound by his attorney’s allegations in the complaint that Exhibit Attached to the complaint is a memorandum of the contract between the parties. Loomis v. New York, New Haven & Hartford RR, (1983) [sic] 159 Mass. 39.[8]
And the judge ruled:
“17. Denied. Contrary to previous ruling of court permitting plaintiff to amend his complaint pursuant to M.R.C.P. Rule 15 (b).”
The Report contains the following summary of facts pertinent to this Request and to the defendants’ related objection that it was error for the trial judge to have allowed the plaintiffs motion to amend the Complaint:
“At the commencement of trial and approximately fifteen minutes into plaintiffs testimony, counsel for plaintiff requested leave to amend the complaint to conform to the evidence. .. . After hearing, the court found that said motion was proper in light of plaintiffs *114 testimony; consistent with pretrial communication between the parties; and the allowance of said motion would not prejudice the defendants’ maintaining their defense upon the merits. Counsel for defendants was granted leave to amend the answer and/or continue the proceeding. The proceedings were continued for two weeks to allow defendants further opportunity to prepare their defense.”
In the first place, the trial judge did not err in allowing the motion. Whether to grant such relief is within the sound discretion of the judge. Here the Report indicates appropriate application of discretion. The judge carefully set forth the considerations which supported his allowance of the motion, and they were entirely proper. Motions to amend pleadings are to be allowed liberally. Dist./Mun. Cts. R. Civ. P., Rule 15 (a). It is appropriate to amend pleadings to conform to evidence adduced at a trial. Id., 15 (b). The judge carefully considered whether the allowance would prejudice the defendants, determined that it would not, and further granted them extra time to prepare for trial under the recast pleadings. The circumstances show no abuse of discretion, but rather a balanced evaluation of the relevant factors.
Although the Report does not contain the details, we gather from the Request and the judge’s Ruling that what might have been an admission by pleading was omitted from the amended complaint. Once the complaint has been amended, the former complaint has no significance. The Request was properly denied.
The defendants made the further Request:
“21. If the court finds that the defendants’ Tender of Settlement filed before trial was reasonable in relationship to the injury actually suffered by the plaintfiff, the plaintiffs recovery cannot exceed the relief tendered and cannot include attorney’s fees incurred after the rejection of the tender of settlement.”
And the judge ruled:
“21. Denied. Defendants’ offer of settlement incorporating the terms outlined in this request were made after the commencement of litigation and filed with the court on the first day of trial. Plaintiff was not obligated to accept said offer no matter its terms.”
We accept the judge’s statement concerning the circumstances under which the offer of settlement was made. Accepting that, it is clear that the Ruling was correct. Such an offer of settlement comported neither with Chapter 93A, §9(3), nor with Dist./Mun. Cts. R. Civ. P., Rule 68.
The Report states that the defendant was aggrieved by the court’s denial of Request 22. However, Request 22 was allowed, albeit with the observation that it was immaterial. The observation was accurate.
Finally, the defendants argue that the trial judge erred in setting February 9, 1983 as the date from which interest was to run on the contract damages. The evidence clearly established that day as the date of breach and loss. It is the appropriate date from which to calculate interest on the award. G.L. c. 231, § 6t\

Conclusion

The judgment of the trial court is reversed as to Count I. The case is remanded for entry of judgment for the plaintiff under Count I in the statutory sum of $25 against each defendant, plus attorneys’ fees as determined on remand. The judgment is in all other respects affirmed. The plaintiff is to have costs of this appeal.

 Chapter 93A furnishes no definition of what constitutes an unfair act or practice made unlawful by [section] 2(a) .... The existence of unfair acts and practices must be determined from the circumstances of each case.” Id., at 241-42.

 The judge's findings contain no specific determination as to why the telephone attempts were unsuccessful.

 The dissent takes issue with a focus “almost entirely on the failure of the defendant to communicate with [the] plaintiff," and urges a focus “on the matter in its entirety” and a decision “upon all the circumstances.” Such a view is entirely appropriate and prompts us to take note of the plaintiffs persistence in his efforts to communicate with the defendants. Between February and June he tried to reach Santacroce several times by telephone and, having failed, wrote a letter, which the defendants ignored. He thereafter made several more attempts to reach the defendants by telephone. If the plaintiff had any responsibility for the breakdown in communications, it was minor compared with the defendants’.

 A regulation promulgated by the Attorney General, 940 Code Mass. Regs, section 3.16(2), “makes it a violation of G.L. c. 93A, [s. ] 2, for one to fail ‘to disclose to a buyer or prospective buyer a fact which may have influenced the buyer or prospective buyer not to enter into the transaction Net v. Boston Survey Consultants, Inc., 388 Mass. 320, 323 (1983).

 In Knowles, the Court noted that the“essential unfairness ” of requiring the bailor to bear the burden of persuasion on the issue of the bailee’s negligence “even though he may not have access to the information” needed to do so “is even more pronounced in cases, like the instant one, where the bailor is a consumer. The consumer’s unfamiliarity with the bailee’s trade practices and commercial customs aggravates the difficult task that all bailors face in trying to rebut the inference of due care which the Bailee has created by selecting the most favorable facts from all the information exclusively available to him.” Id., at 649-50 (emphasis in original).

 For this reason, the judge’s denial of Request 16 [“O’Keeffe is entitled to recover treble damages"] was proper, even though the judge may have had different or additional reasons for denying it.

 The case was decided in 1893. It does not deal with an amendment of pleadings but with the authority of an attorney to bind his client by a statement made in a letter to a prospective litigation opponent.