Wheatley, PJ.
The plaintiff (Feijo), unsuccessful in an attempt to buy a car from Harte Toyota, Inc. (Harte), has sued for breach of contract and a violation of G.L.c. 93A, the Consumer Protection Act.[2] The trial judge found for Harte on the contract claim, and against Harte on the 93A count. The case reaches this court on an agreed statement of facts, under Dist./Mun. R. A. D. A., Rule 8B. We affirm the appeal in part and remand to the trial court.
We recite the facts gleaned from the Agreed Statement and the trial court’s Findings, Rulings and Orders.[3] While shopping for a used pickup truck at Harte’s auto dealership on November 22, 1997, Feijo spied a 1988 Nissan displaying a price of $2,788 which he liked. The following day he returned, test drove the truck, told a Harte salesman that he liked it and asked if he, the salesman, could give him a better price. The salesman replied that he could not, that the price of $2,788 was final. The next day, Feijo returned to Harte, told the salesman that he wanted to buy the truck and offered a $100 deposit. After calling the main office, the salesman said “they accepted it” and proffered a receipt for the deposit and a purchase and sale agreement. The agreement, entitled “Motor Vehicle Purchase Contract,” identified the truck and the price of $2,788. All that remained for completing the content of the sale was a calculation of the sales tax. Feijo signed it, but it was never signed by the defendant.
Above the signature lines was a box containing, in large lettering, the following language:
This contract is not binding upon either dealer or purchaser until signed by dealer or its authorized representative. PURCHASER MAY CANCEL THIS CONTRACT AND RECEIVE A FULL REFUND AT ANY TIME UNTIL S/HE RECEIVES A COPY OFTHIS CONTRACT SIGNED BY AN AUTHORIZED DEALER REPRESENTATIVE. PURCHASER MUST GIVE WRITTEN NOTICE OF CANCELLATION TO THE DEALER.[4]
Three days later, Feijo called Harte on the telephone and was told by someone at Harte that “there was no deal,” that Harte would not sell the truck to Feijo. Later Harte returned the $100 deposit to Feijo and sold the truck to someone else for $5,988. Feijo then sent Harte a 93A letter charging Harte with refusing to adhere to the contractual agreement between it and Feijo, and brought suit.
After trial, the trial judge found that there was no enforceable contract and that Feijo, although attempting to obtain relief under the principle of promissory estop-pel, had neither proven detrimental reliance nor out-of-pocket loss. The court did find, however, that Harte was engaged in “trade or commerce,” as defined in G.L.c. 93A, §2, Lantner v. Carlson, 374 Mass. 606, 611 (1978), and, by engaging in an unfair and deceptive act or practice in not selling the vehicle to Feijo, violated c. 93A, thus prompting this appeal.
*334 Harte’s basic argument is twofold: 1. that the evidence was insufficient to support the finding of a violation of G.L.c. 93A, and 2. that, if there was a violation, the damages, instead of $3,200, should be no more than $25.00. The determination of an unfair or deceptive act is not dependent on traditional tort or contract law concepts. Heller v. Silverbranch Construction Corp., 376 Mass. 621, 626 (1978). Commonwealth v. De Cotis, 366 Mass. 234, 242 (1974). It is impossible to frame definitions which embrace all unfair practices. Levings v. Forbes & Wallace, Inc., 8 Mass. App. Ct. 498, 503 (1979). The act or practice must be within “the penumbra of some common-law, statutory, or other established concept of unfairness.” PMP Associates, Inc. v. Globe Newspaper Co., 366 Mass. 593, 596 (1975).
The mere breach of a contract, without more, is not a 93A violation. Whitinsville Plaza, Inc. v. Kotseas, 378 Mass. 85 (1979). The intentional breach of a contract, especially where the intentional breach is meant to gain, without paying for it, the ongoing benefit of a parly’s earlier performance, Wang Laboratories, Inc. v. Business Incentives, Inc., 398 Mass. 854 (1986), and unfair conduct of a party in failing to perform a contract obligation, in order to force a concession from the other party to which the first parly is not entitled, may constitute a 93A violation. Frank J. Linhares Co. v. Reliance Insurance Co., 4 Mass. App. Ct. 617 (1976). Anthony’s Pier Four, Inc. v. HBC Associates, 411 Mass. 451, 474 (1991). See Hannon v. Original Gunite Aquatech Pools, Inc., 385 Mass. 813, 825 (1982). But that is not the case here. Harte made no attempt to extort anything additional from Feijo; it just refused at all to perform, to sell the car to Feijo.
In his Findings, Rulings and Orders, the trial judge found that “the Statute of Frauds... bars the contract claim.” This implies that he also found that there was no written contract, which, in that no authorized representative of Harte ever signed the purchase and sale agreement, was a proper finding on the facts as stated. Additionally, he found that Feijo had “not proven detrimental reliance, an essential element of promissory estoppel. ... No proof was presented establishing that [Feijo] broke off other negotiations or bypassed other sales opportunities.” See Greenstein v. Flatley, 19 Mass. App. Ct. 351 (1985). Any chance for Feijo to collect the difference between the original purchase price and the ultimate sale price, perhaps the benefit of his bargain, on a traditional theory of breach of contract or estoppel was lost.
In relation to the 93A charge, “[i]t is an unfair or deceptive act or practice for a motor vehicle dealer to fail or refuse to sell a motor vehicle in accordance with any terms or conditions, including price or warranty, which the dealer has advertised or otherwise represented.” 940 CMR 5.02 (6). When Feijo first appeared at Harte’s lot, he found a car which “displayed a price of $2,788.” This was an offer containing the price that Harte “advertised or otherwise represented.” After Feijo decided that he wanted the car, and asked Harte’s salesman if he could give him a better price, the salesman refused, and said that that “price was final.” There was no question in either party’s mind that $2,788 was Harte’s price. Harte’s refusal to sell the car at the advertised price was a violation of this Regulation, and, therefore, an unfair act or practice.
Because of the existence of the Regulation, a party has a legally protected interest which was invaded by a violation of the Regulation.[5] See Leardi v. Brown, 394 Mass. 151 (1985), quoting the U.S. Supreme Court in Linda R.S. v. Richard D., 410 U.S. 614, n.3 (1973). “Congress may enact statutes creating legal rights the invasion of which creates standing even though no injury would exist without the statute” (emphasis supplied). ‘There is no reason to conclude that our Legislature does not possess a similar authority, and we conclude that, in amending G.L.c. 93A, §9, the Legislature exercised its prerogative to create a legal right, the invasion of which, without more, constitutes an injury.” Leardi, supra, at 160.
The trial judge found a 93A violation on other grounds, but was aware of this Regu *335 lation. In a footnote to his decision he stated, “Though not the basis of this decision false advertising by a car dealer constitutes a violation of the Attorney General’s definition of unfair acts or practices. This regulatory standard, however, was not referenced in the 93A letter.” The information that we have as to the content of the 93A letter is in another statement of the judge referring to the letter, “citing 93A which [letter] describes the 93A violation as ‘refusing to adhere to the contractual agreement between yourself [Harte] and [Mr. Feijo].’” We infer that, because the judge found in Feijo’s favor under the 93A count of the complaint, he found that the 93A letter in this case, except for a specific reference to the Regulation, passed muster. A 93A letter complies with the statute if it reasonably sets forth “the acts relied on and was sufficient to give the defendant an opportunity to review the facts and the law to see if the requested relief should be granted and to make a reasonable settlement offer so as to limit damages.” Piccuirro v. Gaitenby, 20 Mass. App. Ct. 286, 292 (1985). Feijo did not have to refer to the specific Regulation. Cohen v. Liberty Mutual Ins. Co., 41 Mass. App. Ct. 748 (1996). We conclude that the reference in Feijo’s 93A letter to his basic complaint of Harte’s refusal to sell, even though it did not contain a specific reference to the Attorney General’s Regulation, was proper notice to Harte under the statute, and that the trial judge properly determined that Harte had violated c. 93A.
Where the court has found for the plaintiff, recovery should be “in the amount of actual damages or twenty-five dollars, whichever is greater. ...” G.L.c. 93A, §9 (3). In light of the trial judge’s denial of Feijo’s claim for “benefit of the bargain” damages under the underlying claim, his contract count, Feijo is not entitled to the same damages for the same act under his 93A count. These damages would be compensatory, single damages, as opposed to punitive, and can not be assessed against Harte under both the underlying claim and the 93A count.
The effect of making single damages correspond with ... the underlying claim... would be to cross the established line, to change the character of the sanction for the lesser violations and load it with a punitive factor. It is one thing to aggregate multiple awards, as the [1989 amendment to c. 93A(3) ] does. It is another thing to redesign single awards and make these punitive also. ... Therefore, in cases such as the one before us, ‘[w]here there has been no judgment [on the underlying claim], our previous rule remains in effect: base damages are calculated according to the interest lost on the money [held by the defendant].’ Kapp v. Arbella Mutual Insurance Company, 426 Mass. 683, 686 (1998), quoting from Yeagle v. Aetna Cas. & Sur. Co., 42 Mass. App. Ct. 650, 655-656 (1997) and Cleva v. Butler, 424 Mass. 413, 424 (1997).
See also Multi Technology, Inc. v. Mitchell Management Systems, Inc., 25 Mass. App. Ct. 333 (1988).
Feijo is entitled to interest on the amount of the deposit for the time it was held by Harte after Harte decided it would not sell the car. The record contains no specific length of time that Harte held the deposit, but presumably it was only for a few days. The amount of interest generated would have been pennies. Feijo’s damages, therefore, are twenty-five dollars, the greater of the actual and nominal amounts. Accordingly, we affirm the trial judge’s decision as to Harte’s liability for violation of G.L.c. 93A and assess damages of $25.00, and remand the case to the trial judge for a determination of reasonable attorney’s fees and costs relating to the c. 93A claim.
So ordered.

 The case against another defendant, Henry Avila, who is not identified in the agreed statement, was dismissed in the trial court.

 This document, by agreement of the parties, was incorporated in the Agreed Statement of the Case for our consideration.

 The contract contained other terms, such as rights in the event of failure by the buyer to take delivery, which are not relevant to this appeal.

 This regulation set by the Attorney General has the force of law. G.L.c. 93A, §9(c); Purity Supreme, Inc. v. Attorney General, 380 Mass. 762 (1980).