COMMONWEALTH *vs.* AMCAN ENTERPRISES, INC., & others.[1]

No. 97-P-476.

Suffolk. January 11, 1999. - July 21, 1999.

Present: BROWN, DREBEN, & BECK, JJ.

*Consumer Protection Act,* Unfair or deceptive act, Damages, Attorney's fees. *Administrative Law,* Regulations.

Nothing in the Attorney General's regulations, 940 Code Mass. Regs. §§ 3.05(1) and 3.16(2) (1993), was contrary to the mandate contained in G. L. c. 93A, § 2(*b*) and (*c*), or was inconsistent with the standard articulated in *Cliffdale Assocs., Inc.,* 103 F.T.C. 110, 164-165 (1984); and, in an action alleging violation of the Consumer Protection Act and those regulations, a judge of the Superior Court applied the correct standard in ordering summary judgment, viz., that a solicitation was deceptive if it contained material misrepresentations or omissions that were likely to mislead the recipients. [334-336]

In an action alleging deceptive solicitation in violation of G. L. c. 93A, § 2(*a*), and regulations thereunder, the judge correctly concluded that the solicitations were deceptive as matter of law on the materials submitted in support of the Attorney General's motion for summary judgment and, where there were no disputed issues of material fact, correctly ordered summary judgment against the defendants. [336-337]

In an action alleging violation of G. L. c. 93A, § 2(*a*), the judge properly exercised his discretion to order the defendants to pay a civil monetary penalty [337-338] and legal fees [340]; however, this court modified the order to include penalties for only the time period during which the defendants had actual knowledge, by reason of an administrative complaint of the United States Postal Service, that their activities were in fact misleading consumers [338-340].

CIVIL ACTION commenced in the Superior Court Department on December 14, 1993.

The case was heard by *Patrick J. King,* J., on a motion for summary judgment, and entry of final judgment was ordered by him.

---

[1] CS Enterprises, Inc., and Charles Smith, the sole shareholder, president, treasurer, and director of AmCan Enterprises, Inc., and CS Enterprises, Inc. Both corporations did business as "North American Directories" and "The New England Yellow Pages."

*Bruce G. McNeill* for the defendants.

*Anthony Rodriguez,* Assistant Attorney General, for the Commonwealth.

DREBEN, J. Between 1990 and 1994, the defendants, using the name "The New England Yellow Pages" and the logo "walking fingers," mailed approximately 2,345,000 advertising solicitations to businesses in Massachusetts. Alleging violations of G. L. c. 93A, § 2,[2] and 940 Code Mass. Regs. §§ 3.05(1) and 3.16(2) (1993),[3] by sending misleading and deceptive solicitations to consumers for listing in a yellow page directory unconnected with a telephone company, the Attorney General brought

[2]General Laws c. 93A, § 2, as inserted by St. 1967, c. 813, § 1, provides as follows:

"(a) Unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful.

"(b) It is the intent of the legislature that in construing paragraph (a) of this section in actions brought under sections four, nine and eleven, the courts will be guided by the interpretations given by the Federal Trade Commission and the Federal Courts to sections 5(a)(1) of the Federal Trade Commission Act (15 U.S.C. 45(a)(1)), as from time to time amended.

"(c) The attorney general may make rules and regulations interpreting the provisions of subsection 2(a) of this chapter. Such rules and regulations shall not be inconsistent with the rules, regulations and decisions of the Federal Trade Commission and the Federal Courts interpreting the provisions of 15 U.S.C. 45(a)(1) (The Federal Trade Commission Act), as from time to time amended."

[3]Title 940 Code Mass. Regs. § 3.05(1) provides:

"No claim or representation shall be made by any means concerning a product which directly, or by implication, or by failure to adequately disclose additional relevant information, has the capacity or tendency or effect of deceiving buyers or prospective buyers in any material respect."

Title 940 Code Mass. Regs. § 3.16(2) provides that an act or practice is a violation of G. L. c. 93A, § 2, if:

"Any person or other legal entity subject to this act fails to disclose to a buyer or prospective buyer any fact, the disclosure of which may have influenced the buyer or prospective buyer not to enter into the transaction."

The provisions of the regulations in question, republished in 1993, were not amended from the earlier versions published by the division of regulations of the Secretary of State's office in 1986.

an action against the defendants under c. 93A, § 4. On the Commonwealth's motion for summary judgment, a judge of the Superior Court determined that the defendants had violated c. 93A, § 2(*a*), at least 2,345,000 times and granted partial summary judgment in favor of the Commonwealth on the issue of liability.[4] Following an assessment of damages hearing, a final judgment entered which included a permanent injunction against the defendants' solicitations, an award of restitution to those persons (nine) who had filed affidavits setting forth the amount paid to the defendants, an assessment of civil penalties of $1,000,000 jointly and severally against the defendants, and an award of attorney's fees to the Commonwealth of $26,415.

In their appeal, the defendants claim that (1) the Attorney General's regulations and the judge's decision are not in accord with current interpretations of the Federal Trade Commission, contrary to the requirements of c. 93A, §§ 2(*b*) and 2(*c*), see note 2, *supra*; (2) the granting of summary judgment was error in the face of the minimal number of complaints and an affidavit from the defendants' expert stating that the defendants' conduct was not deceptive; (3) the civil penalty was improperly assessed as the Commonwealth presented no evidence of actual harm from the defendants' deceptive acts; and (4) the award of

---

[4]The judge found specifically that the solicitation packages misrepresented or failed to disclose the following material information:

"defendants do not publish the local 'yellow pages' customarily distributed to all telephone subscribers in the recipient's area;

"the defendants do not publish the 'white pages' directory customarily distributed to all telephone subscribers in the recipient's area;

"defendants' directory is a small, national, regional, or statewide business-to-business directory which is not distributed to all telephone subscribers in the recipient's region;

"recipients of the solicitation package had not previously contracted with the defendants for the placement of advertising or listing; and

"recipients of the solicitation packages did not have listings in the defendants' last directory."

The judge also concluded, on the basis of examination of the defendants' directory, that "given its content, nature and manner of distribution," it "brought no benefit to most businesses that paid for advertisements . . . . For example, there is no conceivable business reason why Olga's Barber Shop, in Sandwich, MA, one of 26 barber shops listed, would pay $196 to advertize in a regional business-to-business 'yellow pages' directory covering the New England States."

attorney's fees was unsupported by the evidence. We affirm the judgment, as modified in accordance with this opinion, for substantially the reasons set forth by the judge in his careful and well-reasoned memoranda of decision.

1. *Summary judgment materials.* In support of its motion, the Commonwealth submitted the solicitation packages of the defendants,[5] decisions of the United States Postal Service finding that the defendants had engaged in conduct violating Federal law by seeking money by means of false representations through the mail,[6] interrogatories answered by the defendants, and affidavits, including nine from persons who stated that they had believed that the solicitation had come from the local phone company and would not have returned the solicitation had they known its source. The defendants produced affidavits and other material showing that other companies publish directories which are not affiliated with any telephone company, that both the term "yellow pages" and the "walking fingers" logo are in the public domain, and that the defendants had obtained from the Massachusetts Secretary of State trademarks for "The Massachusetts Yellow Pages," "The New England Yellow Pages," and "The Yellow Pages of Massachusetts." They also presented an affidavit of Edward T. Popper, a business school dean and a former consumer research advisor to the Federal Trade Commission, which stated that he had "conducted and reviewed results of a survey of potential mailing . . . recipients" of the defendants — the affidavit gives no further details as to this survey — and concluded that "[r]easonable recipients of th[e]se

---

[5]In addition to the use of the term "yellow pages" and the "walking fingers" logo, the solicitations (printed on yellow paper) stated that a free "white page" listing was included with the purchase of a yellow page listing and listed a reference number. Some solicitations indicated the name of an account representative to call. The recipient was asked to check whether the listing shown was correct and was informed that changes to be indicated "are necessary before printing Forthcoming Edition." At the very bottom of a tear-off form was an inconspicuous statement that the directory "is not affiliated with AT&T or any local telephone company."

The defendants had only a mailing address in Massachusetts and never had a functioning office in the Commonwealth. All mail was forwarded to the defendants' place of business in Florida.

[6]After the Commonwealth filed this action but before the motion judge allowed the Commonwealth's motion for summary judgment, the United States District Court for the District of Columbia issued a preliminary injunction against the defendants. The United States Postal Service was permitted to detain the defendants' mail.

mailings are likely to understand the nature of those mailings, the source of the mailings, and the nature of the directory listing being promoted" and, hence, are not deceived.

a. *Proper standard for determining deception.* The defendants base their argument that summary judgment was improperly granted on two grounds. We treat first their claim that the standard for determining deception set forth in the Attorney General's regulations, see note 3, *supra,* is contrary to the mandate contained in c. 93A, § 2(*b*) and (*c*), see note 2, *supra,* and that this incorrect standard was applied by the judge. Section 2(*b*) of c. 93A states the legislative intent that courts, in construing which acts are deceptive, are to be "guided by the interpretations given by the Federal Trade Commission and the Federal Courts" to the analogous Federal statute, and § 2(*c*) provides that the rules and regulations of the Attorney General "shall not be inconsistent with the rules, regulations and decisions of the Federal Trade Commission and the Federal Courts." See note 2, *supra.*

The defendants argue that 940 Code Mass. Regs. § 3.05(1), see note 3, *supra,* which prohibits a representation which "has the capacity or tendency or effect of deceiving buyers," establishes an outmoded standard in view of the new criteria set forth in *Cliffdale Assocs., Inc.,* 103 F.T.C. 110, 164-165 (1984). That case found "this approach to deception [tendency or capacity to deceive] and violations of Section 5 [the Federal analogue to c. 93A, § 2,] to be circular and therefore inadequate to provide guidance on how a deception claim should be analyzed." *Id.* at 164. The Federal Trade Commission then articulated what it believed to be "a clear and understandable standard for deception." *Ibid.* An act or practice will be found deceptive "if, first, there is a representation, omission, or practice that, second, is likely to mislead consumers acting reasonably under the circumstances, and third, the representation, omission, or practice is material." *Id.* at 165.

The decision, however, noted that these elements articulate the factors actually used in most earlier cases even if couched in terms of "a tendency and capacity to deceive." *Id.* at 165 (citation omitted). Thus, the "likely to mislead" requirement, the Federal Trade Commission noted, reflects the long-established principle that actual deception need not be proved. That the effect be on "consumers acting reasonably under the circumstances" is likewise not a new requirement; an advertise-

ment would not have been considered deceptive if unreasonably misunderstood by an unrepresentative class of persons. *Ibid.* Similarly, the third element, materiality, that is, a representation or omission that "involves information that is important to consumers and, hence, likely to affect their choice of, or conduct regarding, a product," was usually one of the factors considered in the deception cases. *Id.* at 165-166.[7]

In refuting the defendants' argument that the two regulations, see note 3, *supra*, were inconsistent with the standard articulated in *Cliffdale*, the motion judge correctly concluded, based on Massachusetts law, that the newly articulated standard "did not represent a radical change in policy" and that the "new test is rooted in established precedent and does not affect the validity of the Attorney General's regulations." He pointed to *Leardi* v. *Brown*, 394 Mass. 151, 156 (1985),[8] which requires the "tendency to deceive" standard to be construed in the context of a reasonable consumer, and that the misrepresentation be material. See *Purity Supreme, Inc.* v. *Attorney Gen.*, 380 Mass. 762, 777 (1980) (practice may be deceptive if it reasonably could be found to have caused the plaintiff to act differently than he or she otherwise would have acted). Lest there be any doubt that he was applying the correct standard,[9] the judge specifically adopted the *Cliffdale* test in interpreting both regulations, stating, "For purposes of this case, each of these regulations use[s] different words to express the same prohibition; namely, a solicitation package is deceptive if it contains mate-

---

[7]In fact, although the administrative judge in the *Cliffdale* case used the phrase "tendency and capacity to deceive," the Federal Trade Commission found "after reviewing the record that his underlying analysis shows that the three elements necessary for a finding of deception are present in this case." *Id.* at 166.

[8]"In determining whether an act or practice is deceptive, 'regard must be had, not to fine spun distinctions and arguments that may be made in excuse, but to the effect which it might reasonably be expected to have upon the general public.' " *Leardi* v. *Brown*, 394 Mass. at 156, quoting from *P. Lorillard Co.* v. *Federal Trade Commn.*, 186 F.2d 52, 58 (4th Cir. 1950).

[9]Although not the basis of his opinion, the motion judge recognized, as do we, that under c. 93A, § 2(*b*), Massachusetts courts need not adopt Federal interpretations in their entirety but must only be guided by those interpretations. Thus, the Attorney General may adopt regulations that are more restrictive than the rules adopted by the Federal Trade Commission, as long as they are not inconsistent with those rules. *Purity Supreme, Inc.* v. *Attorney Gen.*, 380 Mass. at 780.

rial misrepresentations or omissions which are likely to mislead the recipients."

b. *Deception as matter of law.* Equally without merit is the defendants' contention that it was error to grant summary judgment because there were disputed issues of material fact concerning whether the defendants' solicitations were deceptive. The judge, based upon his review of the solicitation packages, concluded that they were deceptive as matter of law without resort to extrinsic evidence. We agree with his conclusion.

Whether the defendants had the right to use the words "yellow pages" and the "walking fingers" logo is not the issue; rather, the question is whether their use in the context of the solicitation as a whole was misleading. In some cases, whether a representation is deceptive within the meaning of c. 93A, § 2(*a*), may be determined as a matter of law. See *Leardi* v. *Brown*, 394 Mass. at 156-157. In such cases, including those in which the representations are implied, the deceptive meanings can be determined "through an examination of the representation, including an evaluation of such factors as the entire [solicitation], the juxtaposition of various phrases in the document, the nature of the claim, and the nature of the transaction." *Cliffdale*, 103 F.T.C. at 166. While sometimes extrinsic evidence is required to show that reasonable consumers interpret the implied claims in a certain way, *ibid.*, it is unnecessary here — the implied claims by the defendants are self-evident. The judge, within his discretion, properly could determine that neither expert opinion nor a public survey was called for. See *Kraft, Inc.* v. *Federal Trade Commn.*, 970 F.2d 311, 319 (7th Cir. 1992), cert. denied, 507 U.S. 909 (1993). See also *Federal Trade Commn.* v. *Amy Travel Serv., Inc.*, 875 F.2d. 564, 572-573 (7th Cir.), cert. denied, 493 U.S. 954 (1989). As the judge stated:

> "The defendants' use of the word 'yellow pages' and the 'walking fingers' logo was not, in and of [itself], deceptive. However, the conspicuous use of the 'walking fingers' logo and the words 'yellow pages,' together with the use of a local return address[], the promise of a 'free white-page listing,' the reference to an account or reference number and a directory representative combine to give a strong impression that the solicitation package was sent to an existing customer by the publisher of the local

telephone company 'yellow pages' directory. The defendants' solicitation packages, taken as a whole, were likely to mislead business consumers, acting reasonably under the circumstances, to believe that they were sent by the publisher of the local 'yellow pages' directory and that by responding to the solicitation package, the recipients were renewing an existing listing."

That the Commonwealth produced only nine affidavits does not show, as the defendants contend, that "this infinitesimally small number of complaints creates a strong inference that any confusion in the mind of this small number of consumers is immaterial."[10]

The affidavit from the defendants' expert did not create a genuine question of material fact. It improperly stated the ultimate fact and conclusion of law. See *Dolloff* v. *School Comm. of Methuen*, 9 Mass. App. Ct. 502, 505-506 (1980); *Federal Trade Commn.* v. *Amy Travel Serv., Inc.*, 875 F.2d at 573. The expert's partial reliance on a survey cannot in this case be viewed as competent evidence. He provided no details as to the number of consumers who were questioned, what questions they were asked, who they were, or where the survey took place. Even in the absence of a motion to strike, a judge may disregard material in an affidavit that would not be admissible in evidence. See *Baptiste* v. *Sheriff of Bristol County*, 35 Mass. App. Ct. 119, 126 (1993). Since no questions of material fact were presented, and the issue was properly a matter of law, the judge was warranted in granting summary judgment.

Quite rightly, the judge determined the disclaimer referred to in note 5, *supra*, too inconspicuous to be sufficient. See *Donaldson* v. *Read Magazine, Inc.*, 333 U.S. 178, 185-186 (1948); *Removatron Intl. Corp.* v. *Federal Trade Commn.*, 884 F.2d 1489, 1497 (1st Cir. 1989).

2. *Damages and attorney's fees.* At the special hearing on damages, the defendants did not contest the issuance of the injunction; they had already ceased doing business in Massachusetts. See note 6, *supra*. On appeal, they also do not challenge the restitution damages awarded to the nine businesses on whose behalf affidavits had been filed. The defendants focus on the civil sanction penalty.

[10]The Commonwealth also submitted an affidavit that the Attorney General's office had received some seventy-five complaints.

In awarding $1,000,000 against the defendants, the judge relied on the defendants' acknowledgment that they had, between 1990 and 1994, sent approximately 2,345,000 solicitation packages to businesses in Massachusetts. The judge correctly noted that each deceptive solicitation may be viewed as a separate statutory violation for which a judge may, under G. L. c. 93A, § 4, impose a separate civil penalty.[11] *Commonwealth* v. *Fall River Motor Sales, Inc.*, 409 Mass. 302, 313-314 (1991). *United States* v. *Reader's Digest Assn., Inc.*, 662 F.2d 955, 966 (3d Cir. 1981), cert. denied, 455 U.S. 908 (1982). Any penalty actually imposed is, however, subject to the limitation of judicial discretion. 662 F.2d at 967.

In exercising his discretion, the judge considered the factors set forth in *Commonwealth* v. *Fall River Motor Sales, Inc.*, 409 Mass. at 311 (quoting from the *Reader's Digest* case at 967), namely, "(1) the good or bad faith of the defendants; (2) the injury to the public; (3) the defendant's ability to pay; (4) the desire to eliminate the benefits derived by a violation; and (5) the necessity of vindicating the authority of the [Commonwealth]" (in original, "vindicating the authority of the FTC").

The defendants fault the judge for using the *Fall River Motor Sales* factors, as that case involved a party who had violated a consent decree, a party considered more culpable as can be seen from the fourth paragraph of c. 93A, § 4, which imposes a $10,000 penalty for each violation by persons who violate the terms of an injunction or other order issued under § 4. While the defendants are correct that the *Fall River* case involved a party who violated a consent decree, essentially the same factors apply when a consent decree or other court order is not involved. See *Commonwealth* v. *ELM Med. Labs., Inc.*, 33 Mass. App. Ct. 71, 84 n.16 (1992). Thus, 15 U.S.C. § 45(m)(1)(C)

---

[11]General Laws c. 93A, § 4, as inserted by St. 1985, c. 478, provides in relevant part:

> "If the court finds that a person has employed any method, act or practice which he knew or should have known to be in violation of said section two, the court may require such person to pay to the commonwealth a civil penalty of not more than five thousand dollars for each such violation and also may require the said person to pay the reasonable costs of investigation and litigation of such violation, including reasonable attorneys' fees."

(1994) provides, "In determining the amount of such a civil penalty [for violating the analogue to c. 93A § 2], the court shall take into account the degree of culpability, any history of prior such conduct, ability to pay, effect on ability to continue to do business, and such other matters as justice may require." See *United States* v. *J.B. Williams Co.*, 498 F.2d 414, 438 (2d Cir. 1974) ("size of the penalty should be based on a number of factors including the good or bad faith of the defendants, the injury to the public, and the defendants' ability to pay").

In addition to the nine affidavits of the complaining businesses, the affidavit from the Attorney General's office setting forth that it had received seventy-five complaints, and an affidavit relating to attorney's fees, two other affidavits were submitted from employees of that office: one indicating that the employee had counted 2,616 Massachusetts companies listed in the "1992 New England Yellow Pages"; the second that another employee had counted 1,322 Massachusetts companies listed in "1994 Yellow Pages, National Edition." The Commonwealth also calculated that approximately 10,000 Massachusetts business consumers advertised in the defendants' directories from 1990 to 1994, and that since each had paid at least $147 (the defendants had charged amounts from $147 to $196 annually for a listing), damages amounted to $1.47 million. Noting that the United States Postal Service had filed an administrative complaint on April 15, 1991, against the defendants, and that he had found that advertisers had derived little or no benefit from a listing in the defendants' directories, the judge concluded:

> "The defendants have known since at least 1991 that their solicitations were in fact misleading consumers. Indeed, it is reasonable to infer that this was their objective. There is no evidence in the record of the defendants' ability to pay a penalty. The defendants refused to produce discovery showing the income realized from Massachusetts consumers. It is reasonable to infer that a conservative estimate of the losses incurred by Massachusetts consumers who were deceived by the defendants exceed one million dollars. In order to punish the defendants and to deter them as well as others from engaging in similar schemes in the future to bilk Massachusetts consumers, a civil fine equal to the conservative estimate of the damages sustained by Massachusetts consumers is

within the court's discretion to impose, particularly where the defendants have not been required to pay any significant restitution. For these reasons, the court will impose a civil penalty of one million dollars."

Accepting the rationale of the judge, we consider a modification of the award to be in order. The Commonwealth's number of 10,000 advertisers over the period 1990-1994 appears to be derived by taking an approximate average (2,000) of the two figures of 2,616 and 1,322 contained in the affidavits of the employees of the Attorney General and multiplying that figure by five. Since the judge attributed knowledge to the defendants from at least the time of the administrative complaint of the United States Postal Service (April 15, 1991), caution suggests that advertisements prior to that time should not be counted. Accordingly we reduce the civil sanctions to $733,000.[12]

The defendants' contentions concerning the award of legal fees of $26,415 are without merit. The judge took into account the proper factors, and the award was warranted.

As modified herein, the judgment is affirmed.

*So ordered.*

---

[12]This figure is derived by reducing the 10,000 figure to 7,333 (deducting 2000 for 1990 and 667 for 1991) and multiplying that number by the $100 the judge appeared to use in his calculation.