Kaplan, Mitchell H., J.
The plaintiffs, Lori Aspinall[5] and Thomas Geanacopoulos, individually and on behalf of a class of similarly situated plaintiffs, now certified, filed this action against the defendant[6] Philip Morris USA, Inc. (Philip Morris), alleging unjust enrichment[7] and violations of G.L.c. 93A arising from Philip Morris’s use of the term “Lights” and “Lowered Tar & Nicotine” on the packaging of Marlboro Lights cigarettes. The plaintiffs’ third amended class action complaint (complaint), which is the current operative complaint, contains two counts: deceptive and unfair trade practices in violation of G.L.c. 93A, §§2, 9 (Count I) and unjust enrichment (Count II).
The case is before the court on the plaintiffs’ motion for partial summary judgment regarding the remedies that may be available to them, if the violation of Chapter 93A is proven. The plaintiffs frame the two questions presented by their motion as follows:
(1) Can plaintiffs obtain disgorgement as an equitable remedy under G.L.c. 93A, §9 if they are unable to prove “benefit of the bargain” damages, given the severity of the deception and the need to provide incentive for complying with the consumer law?
(2) In the event plaintiffs cannot prove actual damages of more than $25 per class member, will the statutory damages under G.L.c. 93A, §9(3) for “the injury suffered” be calculated on a per class member or per transaction basis if plaintiffs prove that class members suffered an invasion of a legally protected interest each time they paid for Marlboro Lights during the class period?
For the following reasons, the plaintiffs’ motion for partial summary judgment regarding available remedies is DENIED. For the reasons that follow, the court holds that: (1) the plaintiffs cannot be awarded damages in an amount equal to the profits that the defendants earned on the sale of Marlboro Lights in Massachusetts during the class period as an “equitable remedy" under G.L.c. 93A, §9; and (2) if the plaintiffs cannot prove actual damages of more than $25 per class member, the statutory damages under G.L.c. 93A, §9(3) for “the injury suffered” will be $25 for each class member.
BACKGROUND
While, generally, when considering a motion for summary judgment the court will base its decision on the undisputed facts established by the summary judgment record and such other record evidence viewed in the light most favorable to the nonmoving party, for this motion, the court will assume that the plaintiffs can prove the violation of Chapter 93A and then address the questions of law concerning the remedies that would flow from that proven violation. The following facts are, therefore, generally those that the plaintiffs maintain they will prove at trial.
The certified class of plaintiffs consists of all Massachusetts residents and residents of surrounding states (Connecticut, Maine, New Hampshire, New York, Rhode Island, and Vermont) who regularly purchased Marlboro Lights in Massachusetts from November 25, 1994 to November 25, 1998, the date the plaintiffs filed this action.[8] See Aspinall v. Philip Morris Cos., 20 Mass. L. Rptr. 300, 2005 WL 3629357 at *1 (Mass.Super.Ct. Dec. 7, 2005) (Lauriat, J.).[9]
According to the plaintiffs, Philip Morris engaged in practices prohibited by G.L.c. 93A by misleading the public into believing that Marlboro Lights would deliver lower levels of tar and nicotine, when it knew the truth to be otherwise. In fact, Philip Morris intentionally designed the product so that most smokers of Marlboro Lights would receive as much, or more, tar and nicotine than if they had smoked regular cigarettes. Aspinall v. Philip Morris Cos., 442 Mass. at 382. The plaintiffs seek economic damages under G.L.c. 93A on behalf of individuals who purchased Marlboro Lights “low-tar” filtered cigarettes manufactured, distributed, or sold by Philip Morris in Massachusetts.
In 1964, the U.S. Surgeon General issued the first Surgeon General’s Report on cigarette smoking and health and concluded on the basis of all available biomedical literature that: cigarette smoking was a cause of lung cancer and laryngeal cancer in men, a probable cause of lung cancer in women, and the most important cause of chronic bronchitis. In response, Philip Morris claimed to have developed cigarettes with “Lowered Tar & Nicotine.” Throughout the class period, Philip Morris represented to the plaintiffs that Marlboro Lights cigarettes were “light” by using the words “Lowered Tar & Nicotine” on the packaging of Marlboro Lights purchased by the plaintiffs.
Philip Morris based its claims that Marlboro Lights delivered “Lowered Tar & Nicotine” on measurements obtained through the use of smoking machines known as the “Cambridge” testing apparatus. The Cambridge smoking machines measured the amount of tar and nicotine delivered by a cigarette by “smoking” the cigarette in a manner by which the smoke exiting the filter end of the cigarette, where a smoker’s mouth would normally be, passed through a special pad. The tar and nicotine residue from the smoke was collected on the pad and analyzed for tar and nicotine levels. The plaintiffs contend that Philip Morris intentionally designed Marlboro Lights cigarettes to deliver higher levels of tar and nicotine to smokers than would be measured by the Cambridge testing apparatus and used the results of tests to support their false claims that Marlboro Lights were in fact “light” and contained and delivered “Lowered Tar & Nicotine.” The plaintiffs assert that Philip Morris knew that lower tar and nicotine deliveries measured by the Cambridge testing apparatuses were the result of deceptive changes in *77 cigarette design and composition, including the addition of microscopic vent holes on or around the cigarette filter to dilute the tar and nicotine content of smoke per puff when measured by the Cambridge testing apparatuses, and alteration of the tobacco in the cigarettes and the materials used in filters and cigarette paper.
In their complaint, the plaintiffs seek “actual or statutory damages and other relief (both in equity and at law) as may be available to them under M.G.L.c. 93A, including orders that Defendants refund all sums the Plaintiffs and the Class Members paid during the Class Period to purchase Marlboro Lights cigarettes, or that Defendants disgorge all profits which they made on account of any Marlboro Lights purchased by Plaintiffs or members of the Class in Massachusetts during the Class Period, together with any further relief which may be available to them under said statute or the common law.” More specifically, the plaintiffs pray for:
A judgment that Defendants’ acts, practices and conduct have violated M.G.L.c. 93A, §2 and the common law, awarding any actual damages proved or statutory damages in the amount of $25 per class member, whichever is greater, tripled, and directing that Defendants either (a) refund all sums paid by Plaintiffs and the Class Members for Marlboro Lights cigarettes in Massachusetts during the Class Period, or (b) disgorge all profits which Defendants made on account of any such cigarettes sold to Plaintiffs or members of the class in Massachusetts during the Class Period.
Complaint at 18 (emphasis added).
In Aspinall, the SJC discussed the nature of damages that plaintiffs intended to prove at trial and that might be awarded to the class under G.L.c. 93A:
The plaintiffs allege that, as a result of the defendants’ deceptive advertising, all consumers of Marlboro Lights in Massachusetts paid more for the cigarettes than they would have otherwise paid. The plaintiffs expect to offer proof at trial that the amount that all purchasers of Marlboro Lights paid for the cigarettes exceeded their true market value (what purchasers would have paid had they known the truth). If they succeed in their proof, the plaintiffs argue that the correct model for measuring actual damages is the difference between the price paid by the consumers and the true market value of the “misrepresent[ed]” cigarettes they actually received. (Thus, the exact amount of actual damages may be determined by multiplying the number of cigarettes sold, in the years defined by the certification order, by the difference between the price paid and actual fair market value.) This is a variation on the traditional “benefit of the bargain” rule that awards a defrauded party the monetary difference between the actual value of the product at the time of purchase and what its value would have been if the representations had been true . . . We agree that “the benefit of the bargain” damages, if proved with reasonable certainly, would be appropriate in this case.
The defendants suggest that, regardless of whether or not the advertising of Marlboro Lights was unlawful under G.L.c. 93A, the plaintiffs are in no worse economic position than they would have been had they not chosen to smoke Marlboro Lights over regular Marlboro cigarettes. They point to the apparently uncontested fact that Marlboro Lights have always been priced exactly the same in Massachusetts as regular Marlboro cigarettes. Logic, on the other hand, suggests that, all other things being equal, a truly low tar and nicotine cigarette would have economic worth greater than a comparable regular cigarette, due to the added value of an inherently “safer” cigarette. Whether plaintiffs ultimately will be successful in proving actual damages is a matter that need not be resolved at the certification stage.
In the event that the plaintiffs are unsuccessful in their attempt to prove actual damages, however, they will be entitled to recover statutory damages under G.L.c. 93A, §9(3) (“if the court finds for the petitioner, recovery shall be in the amount of actual damages or twenty-five dollars, whichever is greater”).
As fully explained above, the deceptive advertising, as alleged by the plaintiffs in this case, if proved, effected a per se injury on consumers who purchased the cigarettes represented to be lower in tar and nicotine. It follows that, if the violations of G.L.c. 93A alleged by the plaintiffs are proved, all members of the class of purchasers of Marlboro Lights in Massachusetts will have been injured (regardless of whether some smokers actually received lower tar and nicotine). This is so because all purchased (and, presumably, smoked) a product that was deceptively advertised, as a matter of law, because it was falsely labeled or, at least, created the over-all misleading impression that all smokers would receive “lowered tar and nicotine.” Thus, all will be entitled to statutory damages, without regard to whether the plaintiffs are successful in establishing that consumers were overcharged for the deceptively advertised cigarettes.
Aspinall v. Philip Morris Cos., 442 Mass. at 398-402.[10]
With the plaintiffs’ position regarding the facts that they will prove at trial and the SJC’s comments on the economic damages the plaintiffs seek to prove in mind, the court turns to the two questions presented by the plaintiffs’ motion.
*78 DISCUSSION
Summary judgment is granted where there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Mass.R.Civ.P. 56(c); Cassesso v. Commissioner of Corr., 390 Mass. 419, 422 (1983). When reviewing a motion for summary judgment, the court considers the evidence presented in the light most favorable to the nonmoving party. Flynn v. Boston, 59 Mass.App.Ct. 490, 491 (2003). The moving party bears the burden of affirmatively demonstrating the absence of a triable issue. Pederson v. Time, Inc., 404 Mass. 14, 17 (1989). In this case, for purposes of this motion only, there are no disputed material facts, rather, as noted above, the court shall assume that the plaintiffs will be able to prove a violation of G.L.c. 93A in the manner described.
Disgorgement of Profits as an Equitable Remedy
The first question that the plaintiffs asked the court to address is whether they can “obtain disgorgement of profits as an equitable remedy under G.L.c. 93A, §9 if they are unable to prove ‘benefit of the bargain’ damages.” The court begins by noting that, as stated in the plaintiffs’ motion and brief, this question does not track the statutory language on which the plaintiffs rely; that language states that “actual damages or twen1y-five dollars” shall be awarded to plaintiffs and then provides for the possibility that, “in addition,” the court could award “other equitable relief.” See G.L.c. 93A, §9(3). In consequence, during oral argument, the plaintiffs’ question was recast as: whether the plaintiffs could be awarded, as additional equitable relief, the disgorgement of Philip Morris’s profits, if they could not prove the amount of economic loss suffered on the purchase of Marlboro lights, or perhaps even if they could, but the amount of the loss was de minimis. The plaintiffs, in effect, contend that if they prove that Philip Morris violated G.L.c. 93A, the court has the power to award what they describe as “monetary equitable relief,” in this case, the disgorgement of Philip Morris’s profits from the sale of Marlboro Lights in Massachusetts during the class period, as further relief in addition to the damage award that the statute directs the court to enter. They argue that G.L.c. 93A, §9(1) and §9(3) grants the court broad discretion to award such equitable relief as it “deems to be necessary and proper,” and this may include further damages, beyond that which the statute specifies, equal in amount to the defendant’s profits. The plaintiffs cite two Massachusetts cases in support of their position. See Tyler v. Michaels Stores, Inc., 464 Mass. 492, 504 n.20 (2013). See also Kelley v. CVS Pharmacy, Inc., 23 Mass. L. Rptr. 87, 2007 WL 2781163 (Mass.Super.Ct. Aug. 24, 2007) (Gants, J.).
Analysis of the plaintiffs’ argument begins with the relevant language of the statute. General Laws c. 93A, §9(3) states, in relevant part:
In all other cases, if the court finds for the petitioner, recovery shall be in the amount of actual damages or twenty-five dollars, whichever is greater; or up to three but not less than two times such amount if the court finds that the use or employment of the act or practice was a willful or knowing violation of said section two or that the refusal to grant relief upon demand was made in bad faith with knowledge or reason to know that the act or practice complained of violated said section two. For the purposes of this chapter, the amount of actual damages to be multiplied by the court shall be the amount of the judgment on all claims arising out of the same and underlying transaction or occurrence, regardless of the existence or nonexistence of insurance coverage available in payment of the claim. In addition, the court shall award such other equitable relief, including an injunction, as it deems to be necessary and proper. (Emphasis added.)
The language “recovery shall be” is clearly mandatory and directs the court to award successful petitioners under Chapter 93A “actual damages or twenty-five dollars.” There is no room for other discretionary awards in this clause; rather, discretion is granted the court in determining whether to multiply actual damages by a factor of two or three. Moreover, in construing this provision of §9(3), the SJC has specifically stated: “Because the Legislature has determined that an award of $25 suffices as nominal damages, it would be incongruous and inconsistent with that determination to infer that in any circumstances the Legislature intended that the nominal sum should be multiplied.” Leardi v. Brown, 394 Mass. 151, 163 (1985). In consequence, it would also be inconsistent with that legislative determination for the court to conclude that if the violation of Chapter 93A was especially willful, the court, rather than trebling nominal damages, could, in addition to $25, award the plaintiffs as further monetary damages, any profits earned by defendants as a consequence of the wrongful conduct. Further, in the excerpt from Aspinall quoted above, the SJC has already determined that “the benefit of the bargain” damages would be appropriate in this case, if the plaintiffs prove such damages with reasonable certainly, or if they are unable to do so, “they will be entitled to recover statutory damages under G.L.c. 93A, §9(3).” See Aspinall v. Philip Morris Cos., 442 Mass. at 399.
The plaintiffs note that in Aspinall the SJC did include the following comment in a footnote:
The plaintiffs’ second amended complaint, which is the basis for this appeal, also includes a claim for equitable relief, including disgorgement of all profits earned by the defendants on sales in Massachusetts of Marlboro Lights. We are not aware of any Massachusetts decisions holding that plaintiffs in a successful class action G.L.c. 93A suit may, or may not, be awarded equitable monetary damages, *79 and the issue has not been thoroughly briefed or argued. The plaintiffs’ possible entitlement to such relief has no bearing on the issue of class certification, and it is premature to consider the matter at this stage of the litigation.
Id. at 384 n.5. However, this court is not aware of any Massachusetts decision in the ten years since Aspinall was decided that has held that the plaintiffs in a successful G.L.c. 93A class action may be awarded “equitable monetary damages” in addition to actual or nominal damages. A defendant’s profits is unquestionably a means of calculating actual damages in certain kinds of cases. See, e.g., National Merchandising Corp. v. Leyden, 370 Mass. 425, 431 (1976) (where the court discusses business torts in which defendant’s profits are a fair measure of plaintiffs damages).[11] That is not the argument plaintiffs make here. Rather, they argue for this additional monetary relief as further punishment for the conduct that gives rise to the Chapter 93A violation.
The plaintiffs rely on two cases in support of their contention that additional equitable monetary damages may be awarded to them for the defendant’s violation of Chapter 93A. First, in Tyler v. Michaels Stores, Inc., the plaintiffs Chapter 93A claim was based on a violation G.L.c. 93, § 105(a), which prohibits any person or business entity that accepts credit cards for business transactions from writing or requiring a credit card holder to write “personal identification information” that is not required by the credit card issuer on a credit card transaction form. Tyler, 464 Mass. at 493. The defendant store’s employees allegedly requested customers’ zip codes when they processed credit card transactions. Id. The SJC found that zip codes constituted personal identification information, and then went on to consider the types of injury a consumer might suffer in consequence of a violation of § 105(a). The SJC recognized that there appear to be at least two types of injuiy or harm that theoretically might be caused by a merchant’s violation of the statute: “the actual receipt by a consumer of unwanted marketing materials as a result of the merchant’s unlawful collection of the consumer’s personal identification information; and the merchant’s sale of a customer’s personal identification information or the data obtained from that information to a third party.” Id. at 503-04. These two types of harm “caused the consumer an injuiy that is distinct from the statutoiy violation itself cognizable under G.L.c. 93A, §9.” The SJC observed that:
As for damages, it seems unlikely that a merchant’s use of a consumer’s personal identification information in either manner described in the text would cause the consumer to suffer either a readily quantifiable loss of money or property or measurable emotional distress. Nonetheless, receipt of unwanted marketing material as a result of a §105(a) violation represents an invasion of the consumer’s personal privacy causing injuiy or harm worth more than a penny, and the consumer is thus entitled to the minimum statutoiy damage award of twenty-five dollars under G.L.c. 93A, §9(3). The issue of damages becomes more complicated where a merchant sells a consumer’s personal identification information acquired in a manner violating §105(a), because the harm comes from the merchant’s disclosure of the consumer’s private information on the open market, not from a direct assault on her privacy. Disgorgement of the merchant’s profits may provide an appropriate means of calculating damages in the latter situation, both because it is a close approximation of the value of the consumer’s personal identification information on the open market and because such a damage award would remove any financial incentive to merchants to violate the statute. For a single consumer, the amount of damages for such an injuiy also would likely amount to less than twenty-five dollars, thus triggering the minimum damage award provided by G.L.c. 93A, §9(3).
Id. at 504 n.20 (emphasis added). In Tyler, the SJC was thus suggesting a method for calculating damages by considering the amount of theoretic gain that a defendant might obtain from the wrongful use of misappropriated personal information. It was not suggesting disgorgement as further punishment for a violation of Chapter 93A. Indeed, the court noted that this measure of damages would almost always result in a small sum triggering the $25 nominal recoveiy.
In Kelley v. CVS Pharmacy, Inc., the plaintiff filed various claims, including a claim under G.L.c. 93A, after he received an unsolicited letter from his pharmacy.[12] Kelley v. CVS Pharmacy, Inc., 23 Mass. L. Rptr. 87, 2007 WL 2781163 at *1. The defendant pharmacy had agreed to mail certain letters, approved by a drug company, to pharmacy customers who had been prescribed certain medications. The letters warned customers about the dangers of high cholesterol and informed them about the benefits of cholesterol-lowering drugs. The drug company paid the pharmacy $2 for each mailed letter. After paying a vendor to prepare and mail the letters, the pharmacy earned approximately $1 in net profit for each letter sent. The plaintiff had filled a prescription at the pharmacy for a diabetes medication, received an unsolicited letter, and filed claims against the pharmacy, the drug company, and the company that sent the letters, claiming that his right to privacy had been violated and that the pharmacy had engaged in an unfair and deceptive act by sending the letters. On cross motions for summary judgment, the court (Gants, J.) determined that the pharmacy had engaged in an unfair and deceptive act in violation of G.L.c. 93A by failing to inform its customers that it was earning a profit on each letter mailed: ‘This information is so important to the appropriate evaluation of the advice *80 [in the letter] that it is fundamentally unfair to the patient for the pharmacy to deprive him of it.” Id. at *9. The court then went on to consider whether it could order disgorgement of the defendant’s dollar of profit as the remedy. The court expressed concern that because the plaintiff must suffer an injury to have standing to pursue a claim under Chapter 93A, in cases such as Kelley, “if the disgorgement of the financial benefits . . . does not constitute an ‘injury,’ then the plaintiff consumer would not be able to bring an action under G.L.c. 93A, §9 . . . and would have no legal recourse to prevent the unfair and deceptive act or practice ...” Id. at *14. The court found that, as a matter of law, the plaintiff was entitled to recover as damages under Chapter 93A, the net profit that the pharmacy had obtained from its unfair and deceptive act of mailing the plaintiff the letter which did not disclose the pharmacy’s profit. The court, however, determined that it did not need to calculate the actual amount of that net profit because it was more than a penny and less than $25, so under G.L.c. 93A, §9(3), the plaintiff would be entitled to the minimum statutory damage award of $25, plus his reasonable attorneys fees. Id. at *15. In effect, in Kelley, like Tyler, the court concluded that the profit the defendant earned from the misuse of the plaintiffs personal information was a fair measure of the plaintiffs nominal damages. The court did not announce a broad rule that in addition to actual or nominal damages, monetary equitable relief was available as further redress for a deceptive act under Chapter 93A.
Tyler and Kelley do not support the plaintiffs’ assertion that “monetary equitable relief’ in the form of disgorgement of profits is appropriate in this case. Both cases discussed the calculation of damages resulting from a violation of G.L.c. 93A. In neither case did the court rely on the last sentence of G.L.c. 93A, §9(3) and the authorization to order additional equitable relief. Moreover, in this case, the SJC has already held that the plaintiffs suffered loss if the cigarettes that they purchased did not have the benefits that the defendant touted: “the deceptive advertising, as alleged by the plaintiffs in this case, if proved, effected a per se injury on consumers who purchased the cigarettes represented to be lower in tar and nicotine.” Aspinall v. Philip Morris Cos., 442 Mass. at 402. The plaintiffs will not be entitled to disgorgement of profits as an additional equitable remedy under G.L.c. 93A, §9, if they are unable to prove “benefit of the bargain” damages, or prove only a nominal sum, as the statute does not grant the court discretion to order such additional money damages.
Calculation of Statutory Damages under G.L.c. 93A, §9(3)
The second question before the court is whether the plaintiffs would be entitled to statutory damages of $25 under G.L.c. 93A, §9(3), on a per class member basis or on a per transaction basis, if they cannot prove actual damages of more than $25 per class member. The plaintiffs argue that if they prevail on their G.L.c. 93A claim, statutory damages should be calculated as $25 for each purchase of Marlboro Lights in Massachusetts during the class period. They contend that class members suffered an “injury” each time they paid for Marlboro Lights during the class period and that a statutory recovery of $25 must be awarded for each transaction in which a class member purchased Marlboro Lights.[13] The plaintiffs assert that, “given the large number of transactions — and corresponding ‘injuries’ — at issue, assessing the statutory damages on a per transaction basis is the only fair means to vindicate class members’ rights under the statute.” The plaintiffs point to G.L.c. 93A, §4, which provides that the Massachusetts Attorney General may seek up to $5,000 in civil penalties for each separate “violation” of the act, as support for their right to recover $25 for each transaction.
The court finds that, on the facts presented by this case, if a plaintiff cannot prove actual damages of more than $25, by virtue of all of his or her purchases of Marlboro Lights, that plaintiff is entitled to statutory damages of $25 pursuant to G.L.c. 93A, §9(3). Once again, the answer to this question begins with a review of the language of the statute. General Laws c. 93A, §9(3) provides, in pertinent part: “if the court finds for the petitioner, recovery shall be in the amount of actual damages or tweniy-five dollars, whichever is greater . . .” (emphasis added). See Tyler, 464 Mass. at 495 (noting that “the actual words chosen by the Legislature are critical to the task of statutory interpretation”). See also Sullivan v. Brookline, 435 Mass. 353, 360 (2001) (“A fundamental tenet of statutory interpretation is that statutory language should be given effect consistent with its plain meaning and in light of the aim of the Legislature unless to do so would achieve an illogical result”). The statute thus directs the court to look at “the petitioner[’s]” actual damages. In this case, the plaintiffs/petitioners may have suffered actual damages for each cigarette purchased and would be entitled to multiply that damage amount by the number of cigarettes purchased over the class period. See Aspinall v. Philip Morris Cos., 442 Mass. at 398-400. If they are able to prove that amount, they may be entitled to two or three times that aggregate damage number. However, the statute directs the court to determine the actual loss suffered by the petitioner and award that or $25 to that petitioner.
The plaintiffs refer the court to G.L.c. 93A, §4 to support their interpretation of §9; however, that section of Chapter 93A is actually antagonistic to the plaintiffs’ argument. Section 4 provides that the Massachusetts Attorney General may seek up to $5,000 in civil penalties for each separate “violation” of the act. The plaintiffs argue that “[b]ecause each ‘injury’ within the meaning of G.L.c. 93A, §9(3) and Aspinall, 442 Mass. at 401, is necessarily a ‘violation’ within the meaning of G.L.c. 93A, §4, it must follow that each *81 transaction for a purchase of Marlboro Lights within the class period caused a separate ‘injury,’ for which Philip Morris should be assessed $25 in statutory damages.” The court does not follow the plaintiffs’ logic. General Laws c. 93A, §4 states, among other things:
If the court finds that a person has employed any method, act or practice which he knew or should have known to be in violation of said section two, the court may require such person to pay to the commonwealth a civil penally of not more than five thousand dollars for each such violation and also may require the said person to pay the reasonable costs of investigation and litigation of such violation, including reasonable attorneys’ fees. (Emphasis added.)
See also Commonwealth v. AmCan Enterprises, Inc., 47 Mass.App.Ct. 330, 338 (1999) (explaining that “each deceptive solicitation may be viewed as a separate statutory violation for which a judge may, under G.L.c. 93A, §4, impose a separate civil penalty”). Section 4 governs enforcement actions initiated by the Attorney General, not actions brought by private plaintiffs, which are governed by §9. The former permits the Attorney General to bring enforcement proceedings and provides the court with the authority to order a range of civil penalties; the latter provides authority for a private cause of action and directs the court to award actual damages, with discretion to double or treble that amount, or statutory damages in the amount of $25, if actual damages are less. If the Legislature wanted to allow private plaintiffs to recover $25 “for each such violation,” §4 demonstrates that the Legislature knew how to craft a statute that would provide for that relief. See Beeler v. Downey, 387 Mass. 609, 616 (1982) (explaining that “where the Legislature has employed specific language in one paragraph, but not in another, the language should not be implied where it is not present”). Under the plain language of §9(3), the plaintiffs are not entitled to nominal statutory damages of $25 for each of their purchases of Marlboro Lights.
Moreover, on the facts presented by this case, repetitive identical transactions of a relatively small amount, to hold otherwise would clearly be inconsistent with the Legislative intent underlying the statute.[14] The SJC has repeatedly referred to the $25 referenced in §9 as nominal damages, which a plaintiff may recover if he or she cannot prove actual damages of more than $25. See, e.g., Herman v. Home Depot, 436 Mass. 210, 211-12 (2002) (recognizing that the judge awarded plaintiff “nominal damages in the amount of twenty-five dollars as called for by G.L.c. 93A, §9(3)”); Jet Line Services, Inc. v. American Employers Ins. Co., 404 Mass. 706, 718 n.12 (1989) (noting that “nominal damages of $25 are awarded under Section 9 if proof of greater damages is not made”). Nominal damages are defined as, “[a] trifling sum awarded when a legal injury is suffered but there is no substantial loss or injury to be compensated.” Black’s Law Dictionary 447 (9th ed. 2009). It must be remembered that in this action, the plaintiffs seek only economic losses suffered because the “light” cigarettes that they purchased were not light and therefore did not have the economic value associated with such a cigarette. The plaintiffs do not seek damages for health problems or related consequential damages associated with smoking, or smoking a cigarette that delivered more tar and nicotine than they had reason to believe it would. They paid only three dollars for a pack of cigarettes, and the court may take judicial notice that taxes made up a substantial portion of that price. Presumably, their economic loss would have to be some fraction of three dollars. Assuming that a plaintiff purchased cigarettes by the pack, awarding damages in an amount more than eight times the total cost of a pack, for every pack of cigarettes purchased over the class period, simply could not reasonably be characterized as an award of nominal damages.
In Leardi v. Brown, 394 Mass. at 162-63, the SJC held that: “In circumstances where a plaintiff is entitled to treble damages under G.L.c. 93A, and where actual damages, when trebled, are less than $25, then the plaintiff is only entitled to the statutory amount of $25, instead of $75.” As noted above, in reaching this conclusion the court explained that “(b)ecause the Legislature has determined that an award of $25 suffices as nominal damages, it would be incongruous and inconsistent with that determination to infer that in any circumstances the Legislature intended that the nominal sum should be multiplied.” Id. at 163. In addition, the Leardi court affirmed a statutory award of $25 per class member. Id. at 163-64. The court’s holding is the necessary result of its finding that a judgment of $25 to the petitioner (plus reasonable attorneys fees), where actual damages was less than that amount, was the amount that the Legislature determined was sufficient to “deter [the proscribed] conduct and encourage vindictive lawsuits.” Id. at 162. When class actions are successfully prosecuted, that $25 must be awarded to each class member. While allowing damages of $25 for each transaction that might be found to violate the statute might provide even more deterrence of the “proscribed conduct,” a fair reading of Leardi suggests that this would not be consistent with the Legislature’s intent in crafting the sections of Chapter 93A that provide private plaintiffs who have suffered less than $25 of actual damages with the right to recover nominal damages of $25.
ORDER
For the foregoing reasons, the plaintiffs’ motion for partial summary judgment regarding available remedies is DENIED. The court concludes that: (1) the plaintiffs cannot obtain disgorgement of profits as an additional equitable monetary remedy under G.L.c. 93A, §9, and their recovery is limited to their actual *82 damages, potentially doubled or trebled, or if that amount is not greater than $25, nominal damages of $25 per class member; and (2) if the plaintiffs cannot prove actual trebled damages of more than $25 per class member, the statutory damages under G.L.c. 93A, §9(3) for “the injury suffered” shall be $25, for each class member.

On October 4, 2013, the parties filed a stipulation of voluntary dismissal of plaintiff Aspinall’s claims against defendant Philip Morris USA, Inc. Accordingly, Geanacopoulos is now the only named plaintiff and representative of the certified class. For consistency, the court will use the plural and refer to “plaintiffs.”

On January 31, 2013, the parties filed a stipulation of dismissal without prejudice as to Altria Group, Inc.

In a decision dated October 3, 2001, the court (Kane, J.) denied the plaintiffs’ motion for certification of a class of plaintiffs asserting a claim for unjust enrichment; the plaintiffs did not appeal that aspect of the court’s decision. See Aspinall v. Philip Morris Cos., 442 Mass. 381, 385 n.7 (2004).

At the January 24, 2014 hearing, the plaintiffs estimated that the class consists of approximately 400,000 individuals.

On August 13, 2004, the Supreme Judicial Court affirmed the court’s (Kane, J.) decision certifying the class with respect to the claimed violations of Chapter 93A, pursuant to G.L.c. 93A, §9(2). See Aspinall v. Philip Morris Cos., 442 Mass. at 402.

It should be noted that in this case, the plaintiffs are not seeking to recover damages for themselves, or for the class, based on any personal injuries or consequential damages suffered by virtue of smoking Marlboro Lights, but rather economic damages. See Complaint at para. 11.

The parties have argued about the question of whether profit disgorgement is an equitable remedy or a measure of damages in an action at law. The plaintiffs cite Federal Trade Comm. v. Direct Marketing Concepts, Inc., 648 F.Sup.2d 202 (D.Mass. 2009), for the proposition that disgorgement is an equitable remedy. The court, however, agrees with the defendant that this case stands for the proposition that traditionally the equitable remedy of restitution requires a tracing of plaintiffs funds or property into the wrongful possession of the defendant, while disgorgement of profits was traditionally a remedy at law. Id. at 218. Quite frankly, the court finds this distinction to exalt form over substance. Given the language of §9, which requires the court to award actual damages (or $25), the appropriate question is whether in a given case, disgorgement is a fair estimate of actual loss,

The case was originally brought as a putative class action, and although a class was initially certified, the court later decertified the class, so that the plaintiff had to proceed only on his own behalf.

Presumably, a transaction could be the purchase of a pack, a carton, or multiple cartons of cigarettes.

The parties agree that during the class period, a pack of Marlboro Lights cost about $3, retail, including taxes.